[No. 13163-3-II.    Division Two.    July 31, 1992.]

HERB GAINES, ET AL, *Appellants,* v. PIERCE COUNTY,
*Respondent,* THE STATE OF WASHINGTON,
*Appellant,* LAKESIDE INDUSTRIES,
*Respondent.*

716

*Kenneth O. Eikenberry, Attorney General,* and *Millard J. Sloan, Jr., Assistant,* for appellant State.

*Robert E. Mack* and *Smith, Alling, Lane,* for appellant Gaines.

*Richard C. Robinson* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent Lakeside Industries.

*John W. Ladenburg, Prosecuting Attorney,* and *Daniel R. Hamilton, Deputy,* for respondent Pierce County.

MORGAN, J. — Herb and Rose Ann Gaines appeal the dismissal by summary judgment of their claims against Pierce County and the State of Washington.[1] We affirm.

## FACTS

The Gaineses own property at the intersection of State Route 161 and 144th Street East in Puyallup. The drainage basin consists of about 400 acres, and the property sits at its low point. Both the intersection and the property have a long history of being flooded by surface water.

In 1974, the Gaineses filled in the front part of their land and constructed a business called The Cider Press. Between approximately 1976 and 1979, Pierce County approved various developments in the surrounding area. In 1979, the County connected drainage culverts along 141st Street into similar culverts along SR 161.

In the early 1980's, two nearby landowners, Munizza and Soltis, began to ditch and dike their property in order to prevent surface water from accumulating on it. Munizza began around 1981, and Soltis began around 1983. Their activity continued to approximately 1986 or 1987.

In 1983, the Washington State Department of Transportation decided to widen SR 161. Thus, it contracted with Lakeside Industries for excavation services. As part of the contract, Lakeside agreed to indemnify the State with regard to claims arising out of Lakeside's disposal of soil left over from the excavation. Nothing in the contract specified how Lakeside was to dispose of the extra soil.

---

[1]The State also appeals the dismissal by summary judgment of its third party claim against Lakeside Industries. Because we affirm the dismissal of the Gaineses' claims against the State, we need not reach the State's appeal.

While Lakeside was excavating, Soltis, Munizza, and another nearby landowner, Haas, asked Lakeside to deposit soil on their land. Lakeside complied, and the landowners apparently utilized the soil in their diking and ditching operations.

In 1986, a "100-year storm" flooded the intersection and the Gaineses' parking lot. It also caused the State Patrol to close SR 161 for several days. Subsequently, other heavy storms caused flooding in the intersection and Gaineses' parking lot, as well as closures of SR 161.

In 1987, the Gaineses filed a complaint against Pierce County and the State of Washington, requesting monetary and injunctive relief. They alleged inverse condemnation, negligence, nuisance, trespass and violation of the State Environmental Policy Act of 1971 (SEPA). The State and County moved for summary judgment, and several hearings were held. In the end, the trial court dismissed all of the Gaineses' claims.

The Gaineses appeal the trial court's dismissal of their claims.[2] We first consider, together, their claims for trespass, nuisance and negligence. We then consider, separately, their claims based on inverse condemnation and SEPA.

## I

Although we consider the claims for trespass, nuisance and negligence together, we discuss the liability of the State and County separately. We start with the County.

## A

The Gaineses argue that the County is liable for trespass, nuisance and negligence for two reasons. First, they assert

---

[2]The Gaineses also appeal the trial court's denial of their motion for reconsideration and its failure to review a videotape that they submitted in connection with that motion. The tape added nothing of significance. It showed the Gaineses' property in a flooded condition, but neither the State nor the County was disputing that the Gaineses' property had flooded. Also, the Gaineses did not show that they had been diligent in trying to put the tape before the trial court prior to its initial rulings. Without such a showing, the tape was not "newly discovered evidence", see CR 59(a)(4), *Nelson v. Mueller*, 85 Wn.2d 234, 239-40, 533 P.2d 383 (1975), and the trial court was under no obligation to consider it after already having ruled on the motions.

that the County tortiously approved various subdivisions uphill from their property without requiring proper drainage systems. Second, they assert that the County tortiously connected the drainage system for 141st Street, a county road, into the drainage system for SR 161, a state highway.

Preliminarily, the Gaineses do not claim, and the record does not support an inference, that the County or State intended to flood their property. Thus, we do not consider nuisance or trespass committed intentionally.

▮▮▮ Nuisance can be committed negligently. *Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 527, 799 P.2d 250 (1990); *Hostetler v. Ward*, 41 Wn. App. 343, 357-59, 704 P.2d 1193 (1985) (quoting *Taylor v. Cincinnati*, 143 Ohio St. 426, 431-45, 55 N.E.2d 724 (1944)), *review denied*, 106 Wn.2d 1004 (1986). So can trespass. *Zimmer v. Stephenson*, 66 Wn.2d 477, 403 P.2d 343 (1965). Indeed, there is little remaining difference between trespass and nuisance. *Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 684, 709 P.2d 782 (1985); 1 W. Rodgers, *Environmental Law–Air and Water* § 2.15, at 126-27 (1986). Both hinge on an invasion of plaintiff's interest in property. *Bradley*, 104 Wn.2d at 689, 690. The distinction between direct and indirect invasions has been abandoned, *Bradley*, 104 Wn.2d at 689, and it no longer matters whether the invading agent is tangible or intangible. *Bradley*, 104 Wn.2d at 690 (quoting *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979)). The only remaining difference — arguably not a useful one — is that trespass "interferes with the right to exclusive possession of property," while nuisance intrudes on "the interest in use and enjoyment of property". *Bradley*, 104 Wn.2d at 690 (quoting *Borland v. Sanders Lead Co., supra*).

When nuisance is committed negligently, the elements of negligence must be proved. *Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co., supra*; *Hostetler v. Ward, supra* (quoting *Taylor v. Cincinnati, supra*). Because trespass and nuisance are so similar, it follows that when trespass is committed negligently, the

elements of negligence also must be proved. *See Seal v. Naches-Selah Irrig. Dist.*, 51 Wn. App. 1, 5-6, 751 P.2d 873 (in negligent trespass case, trespass instruction not needed because trial court gave negligence instruction), *review denied*, 110 Wn.2d 1041 (1988). The elements of negligence are duty, breach, causation and damages. *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 468, 656 P.2d 483 (1983); *Hostetler*, 41 Wn. App. at 349.

The public duty doctrine provides that a negligence action ·cannot be maintained against state or local government unless the defendant owes a duty of care to the plaintiff individually, as opposed to a duty to the public generally. *Taylor v. Stevens Cy.*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988); *Meaney v. Dodd*, 111 Wn.2d 174, 178, 759 P.2d 455 (1988); *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988); *Bailey v. Forks*, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987). The County relies on this doctrine, arguing that it owes no duty of care to the Gaineses individually. Arguendo, we assume to the contrary — that the County does owe a duty of care to the Gaineses individually. *See Colella v. King Cy.*, 72 Wn.2d 386, 391, 433 P.2d 154 (1967); *Ronkosky v. Tacoma*, 71 Wash. 148, 153, 128 P. 2 (1912); *Patterson v. Bellevue*, 37 Wn. App. 535, 537, 681 P.2d 266 (duty to riparian owner), *review denied*, 102 Wn.2d 1005 (1984). ·

■ ■ Assuming that the County owes a duty of care to the Gaineses individually, its duty is circumscribed by Washington's rules on surface water. Washington regards surface water[3] "as an outlaw and a common enemy against which anyone may defend himself". *Cass v. Dicks*, 14 Wash. 75, 78, 44 P. 113 (1896); *Morton v. Hines*, 112 Wash. 612, 617, 192 P. 1016 (1920); *Wood v. Tacoma*, 66 Wash. 266, 271-72, 119 P. 859 (1911); *Island Cy. v. Mackie*, 36 Wn. App. 385, 388, 675 P.2d 607, *review denied*, 101 Wn.2d 1008 (1984). Govern-

---

[3]Surface water is defined as vagrant or diffuse water produced by rain, melting snow or springs. *King Cy. v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963).

ment has no common law duty to drain it.[4] *Colella v. King Cy.*, 72 Wn.2d 386, 391, 433 P.2d 154 (1967) (quoting *Ronkosky v. Tacoma, supra*); *Wood v. Tacoma*, 66 Wash. at 276 (quoting 4 J. Dillon, *Municipal Corporations* § 1734 (5th ed. 1911)). However, if government chooses to provide drainage by channeling surface water into a watercourse or drainway, it must exercise reasonable care not to substantially increase the volume or velocity of water in a way that causes damage to adjacent land. *Colella*, 72 Wn.2d at 391 (quoting *Ronkosky v. Tacoma, supra*); *Harkoff v. Whatcom Cy.*, 40 Wn.2d 147, 151, 241 P.2d 932 (1952); *Island Cy. v. Mackie*, 36 Wn. App. at 393.

Because government has no common law duty to drain surface water not artificially channeled or collected, it is not ordinarily liable for the increased flow of surface water that results from constructing or allowing others to construct roads, homes, or other improvements that prevent surface water from percolating into the ground. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 875, 523 P.2d 186 (1974); *Wood v. Tacoma*, 66 Wash. 266, 272, 119 P. 859 (1911); *Whiteside v. Benton Cy.*, 114 Wash. 463, 467, 195 P. 519 (1921); *Patterson v. Bellevue, supra*. As the Supreme Court said in *Wilber Dev.*, 83 Wn.2d at 874-75:

> A municipality ordinarily is not liable for consequential damages occurring when it increases the flow of surface water onto an owner's property if the damages arise wholly from changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality. On the other hand, it is liable if, in the course of an authorized construction, it collects surface water by an artificial channel or in large quantities and pours it, in a body, upon the land of

---

[4]The nonexistence of a common law duty has led one court to say that the problem of drainage "has its solution in 'concerted political action rather than in the courts.' *Baldwin v. Overland Park*, 205 Kan. [1,] at 8[, 468 P.2d 168 (1970)]." *Patterson v. Bellevue*, 37 Wn. App. 535, 538, 681 P.2d 266, *review denied*, 102 Wn.2d 1005 (1984).

We have no occasion to consider governmental duty that might arise from a statute or ordinance. No statute or ordinance was applicable at the time of the events in this case.

a private person, to his injury. Under this rule, while municipal authorities may pave and grade streets and are not ordinarily liable for an increase in surface water naturally falling on the land of a private owner where the work is properly done, they are not permitted to concentrate and gather such water into artificial drains or channels and throw it on the land of an individual owner in such manner and volume as to cause substantial injury to such land and without making adequate provision for its proper outflow, unless compensation is made. 18 E. McQuillin, *Municipal Corporations* § 53.144, at 538 (3d ed. rev. 1963). *See Noyes v. Cosselman*, 29 Wash. 635, 70 P. 61 (1902). Surface waters may not be artificially collected and discharged upon adjoining lands in quantities greater than or in a manner different from the natural flow thereof. *Colella v. King County*, 72 Wn.2d 386, 433 P.2d 154 (1967); *King County v. Boeing Co.*, 62 Wn.2d 545, 384 P.2d 122 (1963). At the same time, it is the rule that the flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another. *Laurelon Terrace, Inc. v. Seattle*, 40 Wn.2d 883, 246 P.2d 1113 (1952).

■ Here, Pierce County never undertook to exercise control over surface water draining from the various subdivisions and other improvements in the area, but it did artificially channel some surface water into drains along 141st Street. Thus, Pierce County did not owe a duty of care with regard to surface water flowing from impervious surfaces installed in connection with those subdivisions and other improvements. However, it did owe a duty of care with regard to water channeled into its 141st Street drains. *Colella*, 72 Wn.2d at 391 (quoting *Ronkosky v. Tacoma*, *supra*); *see also Strickland v. Seattle*, 62 Wn.2d 912, 385 P.2d 33 (1963).

■ Assuming that Pierce County was negligent by channeling water into the 141st Street drainage system, the Gaineses have not produced evidence sufficient to support an inference that such negligence was a proximate cause of their damage. Proximate cause has two components: Legal cause and cause in fact. *Hartley v. State*, 103 Wn.2d 768, 777-78, 698 P.2d 77 (1985). Cause in fact is established if plaintiff's injury would not have occurred but for defendant's

breach of duty. *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 476, 656 P.2d 483 (1983); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* 266 (5th ed. 1984). Cause in fact is not established if plaintiff's injury would have occurred without defendant's breach of duty. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 74, 684 P.2d 692 (1984); *Prosser and Keeton on Torts,* at 265.

The Gaineses affirmatively acknowledge that the two primary causes of flooding in the area are "increased development, approved and allowed by the County, and increased filling and diking."[5] Their property lies at the low point of the drainage basin, and all surface water in the basin ultimately flows to it. Their expert testified, "The conveyance system on 141st picks up the water" and carries it to Meridian, but "the size of the culverts . . . is largely irrelevant because the water is probably going to get down to the low spot anyway." The record does not show whether the volume of water from the 141st Street system is great or small when compared to the volume of water flowing from the natural slopes, subdivisions and other improvements in the basin.[6] There was no unusual flooding in the years after the County hooked its 141st Street system into the State's system but before the Gaineses' neighbors diked and drained their properties. The neighbors expressly testified that their diking and draining had the effect of casting an increased amount of surface water away from their properties and toward the low point occupied by the Gaineses. From this evidence, a jury could not reasonably infer that the Gaineses' property would not have flooded but for the unknown quantity of water contributed by the County's drainage system, and the trial court did not err by dismissing the Gaineses'

---

[5] Brief of Appellant, at 4; affidavit of Leytham.

[6] In their reply brief, the Gaineses state, "A County official has admitted that much of the water runoff on SR 161 comes from 141st Street." The cited document, however, discusses unchanneled surface water repelled by impervious surfaces in the area of that street. It does not discuss surface water improperly channeled by the County's 141st Street drainage system.

claims against the County for trespass, nuisance and negligence.

## B

The Gaineses argue that the State is liable for trespass, nuisance and negligence for two reasons. First, they assert that the State is liable because it widened and improved SR 161 a number of times, thereby causing increased surface water to flow onto their property. Second, they assert that the State is liable because Lakeside took some of the earth from these construction projects and deposited it as fill material on the property of adjoining landowners, thereby causing increased surface water to flow onto their property.

The first assertion fails. We again assume that the public duty doctrine is inapplicable, and that the State owes the Gaineses a duty of care as to surface water that it undertook to channel artificially in ditches along SR 161. Further, we assume that the State breached its duty by allowing surface water to flow out of those ditches and onto the Gaineses' property. Notwithstanding these assumptions, the State can be held liable only if the record supports a reasonable inference that the Gaineses' property would not have flooded but for the State's breach, and the record fails to support any such inference. The Gaineses acknowledge that the two primary causes of flooding in the area are "increased development, approved and allowed by the County, and increased filling and diking." The Gaineses' property lies at the low point of the drainage basin; all surface water in the basin ultimately flows to it; and the record does not contain a comparison of the amount of water coming from the highway ditches with the amount of water coming from the basin as a whole. The Gaineses' property did not flood in the years between the last highway project and 1986, and it was during those years that the Gaineses' neighbors, by engaging in extensive diking and drainage on their properties, caused increased surface water to be cast toward the Gaineses. On this record, the needed reasonable inference is absent.

■■ The second assertion also fails. The State engaged Lakeside as an independent contractor, and one who engages an independent contractor is not vicariously liable for the independent contractor's conduct. *Getzendaner v. United Pac. Ins. Co.*, 52 Wn.2d 61, 67, 322 P.2d 1089 (1958); *Woodrome v. Benton Cy.*, 56 Wn. App. 400, 407, 783 P.2d 1102 (1989), *review denied*, 114 Wn.2d 1013 (1990). In any event, the common enemy rule of surface water permitted Lakeside to dike and fill the neighbors' properties as it did, for that rule permits a landowner or one acting at the landowner's behest to repel surface water from the premises, regardless of the fact that the water may enter upon and injure adjoining land. *Whiteside v. Benton Cy.*, 114 Wash. 463, 467, 195 P. 519 (1921); *Morton v. Hines*, 112 Wash. 612, 617, 192 P. 1016 (1920). For both reasons, the State cannot be liable for Lakeside's conduct.[7]

## II

■ Gaineses' next claim is for inverse condemnation. An action for "inverse condemnation" is one brought to recover just compensation for property that has been taken in fact, but without formal court proceedings. *Lambier v. Kennewick*, 56 Wn. App. 275, 279, 783 P.2d 596 (1989) (quoting *Martin v. Port of Seattle*, 64 Wn.2d 309, 310 n.1, 391 P.2d 540 (1964), *cert. denied*, 379 U.S. 989 (1965)), *review denied*, 114 Wn.2d 1016 (1990). The plaintiff in such an action must prove a "taking" within the meaning of the law. A "taking" occurs when government invades or interferes with the use and enjoyment of property, and its market value declines as a result. *Lambier*, 56 Wn. App. at 279. However, there must be more than "a mere tortious interference". *Northern Pac. Ry. v. Sunnyside Vly. Irrig. Dist.*, 85 Wn.2d 920, 924, 540 P.2d 1387 (1975). There must be an invasion that is permanent or recurring, *Miotke v. Spokane*, 101 Wn.2d 307, 334, 678 P.2d 803 (1984); *Northern Pac. Ry. v. Sunnyside Vly.*

---

[7] In one sentence of their reply brief, the Gaineses contend that the County also provided and delivered some of the fill used to dike the neighbors' properties. Assuming that to be true, the common enemy rule of surface water applied to the County to the same extent as the neighbors, the State and Lakeside.

*Irrig. Dist., supra,* or an invasion that involves "a chronic and unreasonable pattern of behavior by the government". *Orion Corp. v. State,* 109 Wn.2d 621, 671, 747 P.2d 1062 (1987), *cert. denied,* 486 U.S. 1022 (1988).

■ The need for a causal relationship between governmental conduct and damage sufficient to constitute inverse condemnation is not expressly discussed in the Washington cases, probably because the relationship is not usually in dispute. Nevertheless, such a relationship must exist before liability for inverse condemnation can attach. In other words, governmental conduct that is not a cause of damage to plaintiff cannot constitute a "taking" for purposes of inverse condemnation. *See Thelen v. Billings,* 238 Mont. 82, 85-86, 776 P.2d 520, 522 (1989) (cause of action for inverse condemnation requires proof of proximate cause); *Loesch v. United States,* 645 F.2d 905, 913 (Ct. Cl. 1981) (same); *Belair v. Riverside Cy. Flood Control Dist.,* 47 Cal. 3d 550, 559-60, 764 P.2d 1070, 253 Cal. Rptr. 693, 698 (1988) (same); *Van Dissel v. Jersey Cent. Power & Light Co.,* 194 N.J. Super. 108, 119-20, 476 A.2d 310, 317 (1984) (same); *Dallas v. Ludwick,* 620 S.W.2d 630, 632 (Tex. Civ. App. 1981) (same); 6A R. Powell, *Real Property* ¶ 876.12[2] (1984).

At a minimum, the causal relationship required for inverse condemnation must include cause in fact as one of its components. In summary judgment proceedings, this means that the evidence must at least support a reasonable inference that the damage alleged to constitute inverse condemnation would not have occurred but for the governmental conduct in issue. If the evidence fails to support such an inference, it cannot be said that governmental conduct was a "taking" of the type needed for inverse condemnation.

Above, we hold that the Gaineses have not produced evidence sufficient to support an inference that negligence by the County or State, if any, was a cause in fact of damage to their property. A fortiori, we here hold that the Gaineses also have not produced evidence sufficient to support an

inference that negligence by the County or State, if any, was a cause in fact of the kind of permanent or recurrent damage that constitutes a "taking" for purposes of inverse condemnation.

## III

The Gaineses next claim that the State Environmental Policy Act of 1971 provides them with a private cause of action for damages and injunctive relief. They base their claim on RCW 43.21C.020(3), which provides in part that "each person has a fundamental and inalienable right to a healthful environment".

In *Miotke v. Spokane*, 101 Wn.2d 307, 678 P.2d 803 (1984), the Supreme Court declined to decide whether SEPA can give rise to a private cause of action. It said:

We decline plaintiffs' invitation to adopt this novel theory, particularly in a case where adequate damages are available under established theories.

101 Wn.2d at 333.

Likewise, we decline to decide whether such a cause of action exists. Assuming without holding that it does, it requires evidence sufficient to support an inference that the State's or County's conduct was a cause in fact of the Gaineses' damage, and for the reasons set forth above, the evidence in this case fails to support any such inference.

Affirmed.

PETRICH, C.J., and REED, J. Pro Tem., concur.

Review denied at 120 Wn.2d 1021 (1993).