858

[No. 66830-2.   En Banc.]
Argued February 10, 1999.     Decided September 9, 1999.
CAL CURRENS, ET AL., *Petitioners*, v. IRENE SLEEK, ET AL., *Respondents*.

*John S. Karpinski*, for petitioners.

*Bullivant, Houser, Bailey, Pendergrass & Hoffman* by *Douglas Fredrick Foley* and *R. Daniel Lindahl*; and *Hoffman Hart & Wagner* by *Ruth Casby Rocker*, for respondents.

*Bricklin & Gendler* by *Jennifer A. Dold*, on behalf of Washington Environmental Council, amicus curiae.

DURHAM, J. — Petitioners Cal and Elsa Currens (the Currenses) seek review of an unpublished Court of Appeals decision affirming the summary judgment dismissal of their complaint against Respondents Irene Sleek and Dennis Stephenson Logging (together, Respondents). At issue is whether liability may arise for property damage caused by an increased flow of surface water onto the Currenses' property after Sleek clear-cut and graded her land. We hold that the common enemy doctrine shields a landowner from liability for surface water flooding only if the landowner exercises due care in preventing unnecessary injury to neighboring properties. Because there is a genuine issue of

material fact regarding whether the Respondents exercised due care, we reverse summary judgment and reinstate the Currenses' claim.

## I

The Currenses and Irene Sleek own neighboring property in Clark County. Water from a portion of the Sleek property naturally seeps into a forested, low-lying sink area on the Currenses' property. In 1993, Sleek decided to clear-cut her property in order to develop four home sites. As required by the State Environmental Policy Act of 1971 (SEPA), chapter 43.21C RCW, Sleek submitted an Environmental Checklist to the Department of Natural Resources (DNR). The checklist indicated that Sleek would plant trees to enhance vegetation on the property and would install dry wells to mitigate storm water impacts.

Dennis Stephenson Logging clear-cut and graded Sleek's property in 1994. However, no action was taken to revegetate the land or to reduce the flow of surface water over the sites. No drywells were ever installed.

The following year, the natural sink area in the Currenses' property flooded, causing 11 trees to fall. The Currenses removed an additional 20 trees in order to ensure the safety of their home. A drainage engineer reported that "the logging on the Sleek property substantially increased the volume and peak flow rates of stormwater onto the Currenses' property, at the bottom of the natural drainage way and in the natural sink." Clerk's Papers at 92. He estimated this increase to be 3 times the natural volume that would accumulate during a large storm and 12 times the normal volume caused by a standard rainstorm. The engineer then concluded that the trees fell due to this increased runoff. The Currenses' tree expert and contractor supported this conclusion.

The Currenses filed suit against Respondents in April 1995. The trial court granted summary judgment dismissal on the grounds that Sleek was shielded from liability under

the common enemy doctrine. The Court of Appeals affirmed. The Currenses petitioned this court for review, arguing that Sleek was liable because her actions were unreasonable and urging the court to reject the common enemy doctrine. The Washington Environmental Council has submitted an amicus brief.

## II

The issues in this appeal are governed by the common enemy doctrine, which has directed the law of surface water in Washington since 1896. *Cass v. Dicks*, 14 Wash. 75, 44 P. 113 (1896).[1] Surface water is "vagrant or diffused [water] produced by rain, melting snow, or springs." *King County v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963). The Currenses contend that Sleek is liable for the damage brought about when the grading and construction on Sleek's property caused surface water to flow off of the property and to collect in a low point on the Currenses' land.

In its strictest form, the common enemy doctrine allows landowners to dispose of unwanted surface water in any way they see fit, without liability for resulting damage to one's neighbor. The idea is that "surface water . . . is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others." *Cass*, 14 Wash. at 78. Washington still adheres to the general common enemy rule that a landowner may develop his or her land without regard for the drainage consequences to other landowners. However, because a strict application of this rule is widely regarded

---

[1]There are three general schemes employed in the United States to apportion liability for damage caused by surface water flooding. These approaches are: (1) the common enemy doctrine, (2) the civil law rule, and (3) the reasonable use rule. Only a handful of states still follow the common enemy doctrine, many having abandoned it in favor of the rule of reasonable use. *See Heins Implement Co. v. Missouri Highway & Transp. Comm'n*, 859 S.W.2d 681, 690 (Mo. 1993) (listing 19 states that follow the reasonable use rule, 9 that follow the civil law rule, and 9 that follow the common enemy doctrine). For an extensive analysis of these three schemes, *see Keys v. Romley*, 64 Cal. 2d 396, 50 Cal. Rptr. 273, 412 P.2d 529 (1966).

as inequitable, this court has adopted several exceptions to the common enemy doctrine over the years.

The first exception provides that, although landowners may block the flow of diffuse surface water onto their land, they may not inhibit the flow of a watercourse or natural drainway. *Island County v. Mackie*, 36 Wn. App. 385, 388, 675 P.2d 607 (1984). Under this exception, a landowner who dams up a stream, gully, or drainway will not be shielded from liability under the common enemy doctrine. A natural drainway must be kept open to carry water into streams and lakes, and a lower proprietor cannot obstruct surface water when it is running in a natural drainage channel or depression. 78 Am. Jur. 2d *Waters* § 134 (1975).

An additional exception prevents landowners from collecting water and channeling it onto their neighbors' land. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 875, 523 P.2d 186 (1974) ("Surface waters may not be artificially collected and discharged upon adjoining lands in quantities greater than or in a manner different from the natural flow thereof."), *overruled on other grounds by Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998). This rule prohibits a landowner from creating an unnatural conduit, but allows him or her to direct diffuse surface waters into preexisting natural waterways and drainways. *Laurelon Terrace v. City of Seattle*, 40 Wn.2d 883, 892, 246 P.2d 1113 (1952) ("[T]he flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another."); *Trigg v. Timmerman*, 90 Wash. 678, 681-82, 156 P. 846 (1916) ("[T]he flow of surface water along such depressions or drain ways may be hastened and incidentally increased by artificial means so long as the water is not diverted from its natural flow.").

Read in conjunction with the above exceptions, the common enemy doctrine in Washington allows landowners to alter the flow of surface water to the detriment of their neighbors, so long as they do not block a watercourse or

natural drainway, nor collect and discharge water onto their neighbors' land in quantities greater than, or in a manner different from, its natural flow. These exceptions to the common enemy doctrine are not unique to Washington, but have been embraced by nearly every jurisdiction where the common enemy doctrine governs drainage liability. *See* Stanley V. Kinyon & Robert C. McClure, *Interferences With Surface Waters*, 24 MINN. L. REV. 891, 916-17 (1940); Frank E. Maloney & Sheldon J. Plager, *Diffused Surface Water: Scourge or Bounty?*, 8 NAT. RESOURCES J. 72 (1968); Robert E. Beck, *The Law of Drainage*, in 5 WATERS AND WATER RIGHTS § 450.2 (Robert Emmet Clark ed., 1972).

■ At the heart of this appeal lies the parties' dispute over whether, and to what extent, Washington courts should also consider the reasonableness of a landowner's actions in determining liability for damage caused by excess surface water. Respondents argue that the common enemy doctrine in Washington does not allow a court to consider the reasonableness of a landowner's actions in determining liability. The Currenses assert that Washington has already recognized that the common enemy doctrine shields only reasonable conduct; a landowner who acts unreasonably may be liable for damages caused by surface water flooding.

Most jurisdictions where the common enemy doctrine has been adopted as the basic rule have modified the doctrine by importing into it qualifications based upon concepts of reasonable use or negligence. 5 Beck, supra, § 451.2(C) (1972) ("In at least fifteen jurisdictions there is language in the opinions suggesting that a landowner must exercise 'due care' . . . ."). Under this approach, landowners are free to alter the flow of surface water, subject to the exception that they must exercise their rights in good faith and with such care as to avoid unnecessary damage to the property of adjacent owners. *See, e.g., Young v. Moore*, 241 Mo. App. 436, 236 S.W.2d 740, 744 (1951); *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195, 199 (1962); *Ballard v. Ace*

*Wrecking Co.*, 289 A.2d 888, 889-90 (D.C. 1972). This due care exception thus serves to cushion the otherwise harsh allocation of rights under the common enemy doctrine. Although it does not affect a landowner's ability to alter the flow of surface water, it does require avoidance of unnecessary infringement upon a neighbor's free enjoyment of his or her property. *Reutner v. Vouga*, 367 S.W.2d 34, 41 (Mo. Ct. App. 1963). What this means in practical terms is that landowners may improve their land with impunity (subject to local land use and permitting requirements) and are not liable for damage caused by the change in the flow of surface water onto their neighbors' land, so long as the landowners act in good faith and do not damage adjacent property in excess of that called for by the particular project.

Washington has never explicitly adopted a due care exception to its common enemy doctrine, but language in past cases indicates that landowner negligence has been a relevant factor in our decisions. In *Wood v. City of Tacoma*, 66 Wash. 266, 273-74, 119 P. 859 (1911), we stated that a landowner in developing land or fending off diffuse waters may be held liable for doing so negligently. We have also held that a landowner may not increase drainage of surface water into a drainway to such an extent that the capacity of the drain is overtaxed. *Strickland v. City of Seattle*, 62 Wn.2d 912, 916-17, 385 P.2d 33 (1963). Furthermore, in both *Laurelon*, 40 Wn.2d 883 and *Trigg*, 90 Wash. 678, the court absolved the landowner who caused the flooding from liability, noting that there was no negligence. Finally, in *Morris v. McNicol*, 83 Wn.2d 491, 495, 519 P.2d 7 (1974), we stated that the common enemy doctrine would prevent liability only "if the upland landowner's use is reasonable." We repeated this language with approval recently in *DiBlasi v. City of Seattle*, 136 Wn.2d 865, 969 P.2d 10 (1998). Because of these references, other jurisdictions have listed Washington as a jurisdiction that has incorporated a due care exception into its common enemy jurisprudence. Gregory C. Sisk, *Toward a Unified Reasonable Use Approach to Water Drainage in Washington*, 59 Wash. L. Rev. 61, 73

(1983) (citing *Argyelan v. Haviland*, 435 N.E.2d 973, 986 (Ind. 1982) (Hunter, J., dissenting); *Pendergrast v. Aiken*, 293 N.C. 201, 236 S.E.2d 787, 793 (1977); *Chudzinski v. City of Sylvania*, 53 Ohio App. 2d 151, 372 N.E.2d 611, 615 n.3 (1976); *State v. Deetz*, 66 Wis. 2d 1, 224 N.W.2d 407, 414 n.3 (1974)). *See also* Janet Fairchild, Annotation, *Modern Status of Rules Governing Interference With Drainage Surface Waters*, 93 A.L.R.3D, 1193, 1205-06 (1979). Although this court's references to a reasonableness requirement have been vague, the language in *Wood, Morris*, and *DiBlasi* indicates that Washington requires that a landowner exercise due care when engaging in activities that affect the flow of surface water. Furthermore, such an exception to the common enemy doctrine is mandated by the realities of increased development density in the state. Indeed, we know of no other jurisdiction in the country that still adheres to the traditional common enemy doctrine without some sort of requirement that landowners not unreasonably interfere with their neighbor's enjoyment of their property. We therefore unambiguously hold that under our common enemy jurisprudence, landowners who alter the flow of surface water on their property must exercise their rights with due care by acting in good faith and by avoiding unnecessary damage to the property of others.

### III

Amicus curiae Washington Environmental Council asks the court to reject our common enemy jurisprudence entirely and to adopt in its place the reasonable use rule. Under the reasonable use rule, a landowner is entitled to make reasonable use of his or her land, even if the use alters the flow of surface water, but the landowner may incur liability if the interference is unreasonable in light of the relative advantage to the actor and disadvantage to the neighbor. 78 AM. JUR. 2D *Waters* § 122 (1975). The rule has been adopted from the RESTATEMENT OF TORTS §§ 822-31, 833 (1939) and has been paraphrased by other courts as the

right of landowners to deal with surface water as they wish so long as their act is reasonable under all the circumstances. Maloney & Plager, 8 NAT. RESOURCES J. at 80. The doctrine rests on tort principles and thus involves a case-by-case analysis, including consideration of the nature and importance of the improvements, the foreseeability of the injury, the extent of the interference with the surface water, and the amount of injury. 78 AM. JUR. 2D *Waters* § 123 (1975). The reasonable use rule is akin to a nuisance cause of action and requires the court to weigh the utility of the improvements against the resulting damage to the adjacent property. Sisk, 59 WASH. L. REV. at 77.

At least 20 jurisdictions now employ the reasonable use rule to decide drainage liability cases. *See Heins Implement Co. v. Missouri Highway & Transp. Comm'n*, 859 S.W.2d 681, 690 (Mo. 1993). Several commentators have urged the repudiation of the common enemy doctrine in favor of the reasonable use rule. *See* Maloney & Plager, 8 NAT. RESOURCES J. at 85-89; Sisk, 59 WASH. L. REV. at 68 n.34. Advocates for the rule explain that it is less rigid and allows for increased flexibility in addressing surface water liability in a fact-specific manner. *Id.* In addition, the reasonable use rule is lauded because it shifts some of the costs inherent in increased urbanization back onto the developer. *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.*, 62 Ohio St. 2d 55, 402 N.E.2d 1196, 1199 (1980).

■ We decline to abandon our common enemy jurisprudence in favor of the reasonable use rule. The critical difference between the two approaches is that the common enemy doctrine does not require any inquiry into the utility of the particular project. When determining liability under the common enemy doctrine, the due care exception requires the court to look only to whether the landowner has exercised due care in improving his or her land, i.e., whether the method employed by the landowner minimized any unnecessary impacts upon adjacent land. Unlike the reasonable use rule, a landowner's duty under the common enemy doctrine is not determined by weighing the nature

and importance of the improvements against the damage caused to one's neighbor. Rather, a landowner has an unqualified right to embark on any improvements of his or her land allowed by law, but must limit the harm caused by changes in the flow of surface water to that which is reasonably necessary.

A rule that requires parties to litigate the importance of a particular project in order to apportion liability is inconsistent with this state's historic deference to property rights. Furthermore, adopting the reasonable use rule would constitute an abrupt break with past precedent. In contrast, the common enemy doctrine, tempered by the due care exception, is consistent with the gradual evolution of our surface water drainage law. As Justice Hale said, "[r]ules of law, like governments, should not be changed for light or transient causes." *State ex rel. Wash. State Finance Comm. v. Martin*, 62 Wn.2d 645, 666, 384 P.2d 833 (1963). This court has applied the common enemy doctrine for over a century, and most recently in *DiBlasi*, 136 Wn.2d 865. We accordingly refuse the invitation to discard our common enemy jurisprudence in favor of the reasonable use rule.

## · IV

The outcome of this appeal is thus determined by application of our common enemy doctrine.[2] Respondents are not liable under the common enemy doctrine for flood damage caused by the improvements, unless, in the course of

---

[2]The Court of Appeals mistakenly concluded that the common enemy doctrine was "irrelevant" in this case because Sleek did not intentionally alter surface water flow. The court implied that the common enemy doctrine applies only to situations where a landowner intentionally alters surface water flow, rather than inadvertently affecting the flow of surface water through development. There is no support in our case law for this distinction. The common enemy doctrine is a comprehensive scheme that governs the drainage of surface waters and it "applies regardless of the purpose for which the drainage pattern of the land is altered, or whether the intent was actually to influence water flow." Gregory C. Sisk, *Toward a Unified Reasonable Use Approach to Water Drainage in Washington*, 59 WASH. L. REV. 61, 74 n.66 (1983). *See generally* 3 HENRY PHILLIP FARNHAM, THE LAW OF WATERS AND WATER RIGHTS § 890, at 2614-19 (1904).

making those improvements, they blocked a natural drain or waterway, collected and discharged water onto the neighbor's land, or failed to exercise due care in preventing unnecessary damage.

Under the facts of this case, it is clear that the first two exceptions to the common enemy doctrine do not apply. Respondents did not block the flow of a waterway or natural drain. Nor did they collect and discharge water onto the Currenses' property. In grading the land, the Respondents caused water that otherwise would have been absorbed into the ground to run off onto the Currenses' property. They did not construct culverts or ditches or artificially channel the water in any way. Rather, the water flowed in a diffuse fashion, by force of gravity, from a higher elevation to the sink hole on the Currenses' property.

■ The question here is whether the third exception applies to allow the Currenses to bring suit. The due care exception to the common enemy doctrine specifies that a landowner will be shielded from liability only where the changes in surface water flow are made both in good faith and in such a way as not to cause unnecessary damage. The Currenses have the burden of proof to show that the flooding damage of their property was a result of the Respondents' bad faith, or that it was in excess of that necessary for the completion of the project.

The Currenses assert that Sleek's failure to comply with the mitigation measures specified in the Environmental Checklist Sleek submitted to the DNR violates the due care exception. We do not now hold that the mere failure to comply with the Environmental Checklist in and of itself constitutes a lack of due care. However, such failure may be considered by the trier of fact in determining whether the Respondents acted in good faith and with such care as to avoid unnecessary damage to the Currenses' property. Given that genuine issues of material fact exist, summary judgment is inappropriate.

## CONCLUSION

Although we decline to reject our common enemy juris-

prudence in favor of the reasonable use rule, we take the opportunity to clarify that Washington's law of drainage allows for a due care exception to the general rule against liability. Because there is a genuine issue of material fact as to whether the Respondents exercised due care, summary judgment is reversed.

SMITH, JOHNSON, ALEXANDER, TALMADGE, and IRELAND, JJ., concur.

SANDERS, J. (dissenting) — Damnum absque injuria is the doctrine which allows for "[l]oss, hurt, or harm without injury in the legal sense; that is, without such breach of duty as is redressible by a legal action." BLACK'S LAW DICTIONARY 393 (6th ed. 1990). Such is the general rule which denies imposition of liability on the owner of an upland estate for damages occasioned to his low-land neighbor by surface water drainage. *Cass v. Dicks*, 14 Wash. 75, 78, 44 P. 113 (1896).

To this general rule of nonliability we have recognized two certain exceptions relating to blockage of a water course and/or collecting and channeling water onto one's neighbor's property. However, as the majority correctly observes, neither exception pertains here. So we are left with three choices: (1) we can affirm the trial court and the Court of Appeals by dismissing the action; (2) we can abandon the doctrine altogether; or (3) we can engraft a "reasonable use" exception. The majority chooses the third, but I would repair to the first. Notwithstanding, even if the third course were open to us, I would not find these facts to flow within its banks.

The majority's reasons not to adopt a reasonable use "rule" are equally applicable to rejection of a reasonable use "exception." One such objection is that the reasonable use rule is "inconsistent with this state's historic deference to property rights" and the adoption of such a rule "would constitute an abrupt break with past precedent." Majority at 867. I would add, both the rule and the exception lack

certainty and predictability. Both lead to an ad hoc jurisprudence. Commentators have found no difference in application between the reasonable use *rule* and the reasonable use *exception*.

If the common enemy rule says:

YOU CAN TAMPER WITH NATURAL FLOW and the modification adds:

IF YOUR CONDUCT IS REASONABLE and if the natural flow rule says:

YOU CANNOT TAMPER WITH NATURAL FLOW and the modification adds:

UNLESS YOUR CONDUCT IS REASONABLE then, there would seem to be no difference, and the summation would result in a new rule:

YOU CAN OR CANNOT TAMPER WITH NATURAL FLOW DEPENDING UPON WHETHER YOUR CONDUCT IS OR IS NOT REASONABLE.

The only suggested difference is in "the practical question of prediction and proof." The notion is that with a modified natural flow rule, the burden is on one who interferes to show reasonable conduct, whereas with a modified common enemy rule, the premise is in favor of alteration and the person claiming damage has to show that the conduct was unreasonable. Such a distinction would seem to follow from the basic premise of each rule; if such a distinction exists, however, the cases on reasonable use modification have not made it clear.

5 ROBERT E. BECK & EDWARD W. CLYDE, WATERS AND WATER RIGHTS § 453.3, at 518 (Robert Emmet Clark ed., 1972) (footnote omitted).

The majority's attempt to "unambiguously" (Majority at 865) add some definition to what is or is not within the new exception is quite unsatisfactory:

What this means in practical terms is that landowners may improve their land with impunity (subject to local land use and permitting requirements) and are not liable for damage caused by the change in the flow of surface water onto their

neighbors' land, so long as the landowners act in good faith and do not damage adjacent property in excess of that called for by the particular project.

Majority at 864. The difficulty with the majority's invented exception is amply demonstrated by the manner in which the majority attempts to apply it to the facts of this case. While the majority recognizes that landowners may improve their property "with impunity" and are therefore "not liable for damage caused by the change in the flow of surface water onto their neighbors' land," the majority would only include within this rule of nonliability (1) "act[s] in good faith" which (2) "do not damage adjacent property in excess of that called for by the particular project." Majority at 864.

Here the uphill landowner clear-cut a forested area to allow for future development. There is no claim that this clear-cut was unreasonable or unnecessary for either the development or, for that matter, the harvest of timber. Nor is there any claim that the clear-cut was accomplished in an extraordinary or unusual manner, although all concede clear-cutting trees may increase diffuse surface drainage. Significantly, there is no evidence removal of these trees either blocked a water course or collected or channeled water. The common-law rule imposes no liability on the uphill landowner due to a mere increase in surface drainage which his development might occasion. *Hedlund v. White*, 67 Wn. App. 409, 416 n.10, 836 P.2d 250 (1992) ("[A]n uphill owner may incidentally increase the quantity or velocity of surface water in a natural watercourse or drain, so long as the water is not ultimately diverted from its natural flow."); *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 876, 523 P.2d 186 (1974) ("[T]he mere fact that the amount of water reaching the plaintiff's land, by reason of the development of the platted lands, might be greater than it formerly was, would not entitle it to compensation for any resulting damage."), *overruled on other grounds by Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998).

Therefore the proper legal conclusion is that the in-

creased runoff occasioned by this project would not, under any construction of the established rule, impose liability on the uphill landowner.

Indeed the only thing the uphill landowner failed to do was prevent runoff onto his downhill neighbor by constructing a dry well, dam, or intersecting ditch. While he or she could have done those things, it is the very purpose of the traditional rule to relieve the uphill landowner of that responsibility, casting it instead upon the lowland owner. To say then that the uphill landowner is required to exercise "due care" in the sense that the uphill landowner must not discharge surface water onto the lowland estate is to allow the so-called exception to devour the rule.[3] Even jurisdictions that subscribe to the reasonable use "exception" do not premise a lack of due care upon the failure to construct a drainage ditch. *See, e.g., Ballard v. Ace Wrecking Co.*, 289 A.2d 888, 890 (D.C. 1972) ("[S]ince the defendants did nothing more than clear the land in a manner which was reasonable and non-negligent as they were entitled to do for the purposes of demolition and new construction . . . there . . . [is] no duty on their part to construct a drainage ditch . . . .").

But now the majority has apparently imposed an undefined duty upon the upland owner to use "due care" not to discharge increased surface waters onto the lowland property even though those surface waters are the necessary result of the development of the land for civilized use. By predictable consequence, every time the lowland property owner experiences water damage attributable to drainage he will have a potential claim against the upland owner for failure to use "due care" to prevent the water from flowing onto his property in the first place. Although the majority casts its rule as "the opportunity to clarify" Washington's drainage law (Majority at 869), in point of fact it is a total abrogation of the certain rule of nonliability in such situations.

---

[3]Even if we were to impose a duty on the upland owner to capture his surface water, I cannot imagine how the majority would impose a similar duty upon the logging company, the dismissal of which is also reversed by the majority.

Moreover, if we impose a duty of "due care," how do we determine when that duty has been discharged? The majority apparently defers this question to the jury without further definition, thereby inviting lack of certainty and ad hoc decision-making. It does suggest, however, that the failure of a landowner to conform to his environmental checklist may be "considered by the trier of fact" (Majority at 868), although the majority does not purport to limit the duty of due care simply to variations from an environmental checklist, nor even hold such lack of conformity, if found, demonstrates lack of due care ("We do not now hold that the mere failure to comply with the Environmental Checklist in and of itself constitutes a lack of due care." Majority at 868). Unless we can identify a factual basis in this record which, if proved, would support the conclusion that this property owner has not exercised due care, we have no business remanding this case for a useless trial. *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980) (purpose of a motion for summary judgment is to avoid useless trials when no genuine issue of material fact exists).

The majority cites no authority in support of its claim that breach of a permit condition, much less variation from an environmental checklist, may even be "considered" by the trier of fact to impose a duty on an upland landowner to benefit his lowland neighbor. I would not casually announce such a far-reaching doctrine without argument, briefs, and precedential authority, none of which is present here.

The State Environmental Policy Act of 1971 (SEPA) checklist supplied to the Department of Natural Resources stated runoff water "will flow into dry wells." Clerk's Papers at 57. Compliance with SEPA may be a condition precedent to permit issuance although it is not a permit in and of itself. An environmental checklist is an informational document submitted to the responsible official to assist his threshold determination as to whether further environmental review is necessary or appropriate. The

checklist may be helpful to determine if the project has a probable significant adverse environmental impact. RCW 43.21C.031. At most a misrepresentation or lack of material disclosure in an environmental checklist allows the responsible official to withdraw the determination of non-significance. WAC 197-11-340(3)(a)(iii). But even if it were ultimately appropriate to mitigate or deny a project pursuant to SEPA, such mitigation or denial must be based upon a formally designated policy, plan, rule, or regulation to pass legal muster. WAC 197-11-660(1)(a). But there is no evidence of such a formally adopted regulation requiring dry wells in this record.

In the final analysis the majority's imposition of a generalized duty of "due care" is not a clarification of preexisting law but its complete abrogation. Moreover, the only facts of record suggesting the uphill landowner failed to use "due care" in this case is the failure of the uphill landowner to take positive preventive measures to divert the natural flow of surface water away from the downhill property. The common law does not impose such a duty, nor does our precedent, nor does precedent from even those jurisdictions which have adopted the reasonable use exception. If the majority wants to reach such a result, thereby abrogating the applicable rule in favor of uncertainty and chaos, it should first overrule prior precedent and provide a justification for doing so. But it does not, and I cannot. Therefore I dissent.

GUY, C.J., and MADSEN, J., concur with SANDERS, J.

After modification, further reconsideration denied December 14, 1999.