# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARLOS and LYNDA GUEITS, a married couple, | No. 87251-6-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| WHIDBEY GOLF AND COUNTRY CLUB, d/b/a WHIDBEY GOLF CLUB, a Washington corporation, | |
| Respondent. | |

BIRK, J. — Carlos and Lynda Gueits brought claims of negligence, nuisance, and breach of contract against Whidbey Golf and Country Club (WGCC), asserting WGCC's improper maintenance of a drainage system on its property caused the Gueitses' home to flood in February 2020.  The trial court granted WGCC summary judgment on the Gueitses' claims, and the Gueitses appeal.  Because the Gueitses were not third party beneficiaries to WGCC's contract with Island County and the City of Oak Harbor, and because the Gueitses have not furnished evidence supporting an inference that the flooding would not have happened but for WGCC's alterations to the natural flow of water, we affirm.

I

WGCC is a privately owned golf course in the Oak Harbor.  WGCC is situated at the bottom of a drainage basin and receives runoff and stormwater from adjacent neighborhoods.  Several residential properties border the golf course,

including the home of Carlos and Lynda Gueits, which was located near the lowest part of the course. Testimony from WGCC's groundskeeper suggests that the Gueitses' property was lower in elevation than WGCC.

In 2002, WGCC entered a 20 year agreement ("Drainage Agreement") with Island County and Oak Harbor regarding a stormwater control and conveyance system installed on WGCC property consisting of a series of culverts, ditches, drainpipes, ponds, and a transfer-pump station. All parties acknowledged that "during peak drainage periods the water could possibly overwhelm and impede the capacity of the Golf Club drainage system causing flooding and associated nuisances on and in the vicinity of the Golf Club property," and that the parties each benefitted from the operation of the drainage system. Under the Drainage Agreement, WGCC agreed to "[a]ssume responsibility for the operation and maintenance" of the system and to "[c]omply with current standards for stormwater quality and best management practices." In return, Oak Harbor and Island County agreed to reimburse WGCC for a portion of the maintenance and operation costs of the system and to have crews available to render assistance on an emergency basis, based on priorities established by Oak Harbor or Island County.

On February 5, 2020, the Lieutenant Governor of Washington declared a state of emergency in 19 counties, including Island County, due to "a severe winter storm event," which began on January 20 and was predicted to continue until at least February 8. Beginning in January, WGCC members and staff observed the WGCC drainage system becoming overwhelmed. The Gueitses allege that on February 8, water from the golf course encroached on their property and flooded

2

the ground floor of their home. They allege the water remained in their home for about a week.

According to the Gueitses' expert, Ken Waldal,[1] the WGCC drainage system was rated for a 100 year rainfall event. Waldal testified that a 100 year rainfall for the Oak Harbor area over a 24 hour period would be 2.70 inches, and a 25 year rainfall would be 2.25 inches. Between February 5 and February 10, 2020, the highest 24 hour precipitation amount recorded among three Oak Harbor stations was 2.03 inches. Waldal testified that the WGCC drainage system, as designed, "should have been able to mitigate the stormwater runoff in February 2020." According to Waldal, detention ponds in the WGCC drainage system likely accumulated soil and sediment over time, reducing their runoff storage capacity. Waldal concluded that "the [WGCC drainage] system overwhelm and subsequent flooding was caused by insufficient maintenance of the [drainage] system."

On August 30, 2022, the Gueitses brought negligence, breach of contract, and nuisance claims against WGCC for allegedly causing the flooding. On March 25, 2024, WGCC moved for summary judgment dismissal of the Gueitses' claims. On October 16, 2024, the trial court granted WGCC's motion for summary judgment on the bases that the Gueitses' negligence and nuisance claims were

---

[1] The trial court ruled that Waldal, a landscape architect, was not qualified to offer expert testimony "on the questions of how and why the flooding and 'system overwhelm' " occurred and declined to consider his statement on that basis. The Gueitses contest this decision on appeal. However, because the Gueitses have not provided evidence of facts necessary to overcome summary judgment even if Waldal's testimony were admissible in its entirety, we decline to reach this issue. Waldal's testimony is described here to capture the full scope of the evidence in the light most favorable to the Gueitses.

barred by the common enemy doctrine and that they had not established a contractual relationship with WGCC as required to support a breach of contract claim. This appeal followed.

II

We review the grant of summary judgment de novo. Johnson v. Lake Cushman Maint. Co., 5 Wn. App. 2d 765, 777, 425 P.3d 560 (2018). We consider all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. Id. Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

A

The Gueitses assert that WGCC breached its duty under the 2002 Drainage Agreement to properly maintain the drainage system and to request assistance from Oak Harbor and Island County during the February 2020 flooding. Although the Gueitses are not named parties to the Drainage Agreement, they argue that WGCC nevertheless owed them duties under the agreement. To assert a breach of contract claim as a nonparty to a contract, the Gueitses must have been intended third party beneficiaries of the contract. Brummett v. Wash.'s Lottery, 171 Wn. App. 664, 678-79, 288 P.3d 48 (2012). In determining whether contracting parties intended to designate a third party beneficiary, we look to "the terms of the contract as a whole construed in the light of the circumstances under which it was made." Kim v. Moffett, 156 Wn. App. 689, 699, 234 P.3d 279 (2010). Benefits to

4

a third party that are merely incidental, indirect, or consequential rather than direct do not confer third party beneficiary status. Id. Creation of a third party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract. Id. at 701. The court must look to the terms of the contract to determine whether performance under the contract would necessarily and directly benefit the party claiming third party beneficiary status. Id. The intention of the parties in this respect is determined by the terms of the contract as a whole construed in the light of the circumstances under which it was made. Id. at 699.

The Drainage Agreement does not support a finding that the Gueitses were intended third party beneficiaries of WGCC's contract with Oak Harbor and Island County. The Drainage Agreement described the respective undertakings of WGCC, Oak Harbor, and Island County. WGCC agreed to assume responsibility for the operation and maintenance of the stormwater control and conveyance system described in the agreement. WGCC did not expressly undertake obligations to other parties, and the agreement does not identify any other parties. At most, the recitals to the Drainage Agreement reflect that the parties were aware of the risk of flooding in "the vicinity" of WGCC. But there is no indication within the agreement that the contracting parties intended WGCC to assume direct obligations to adjacent landowners. The Gueitses were incidental beneficiaries of the Drainage Agreement at most, and thus the trial court properly dismissed the Gueitses' breach of contract claim.

5

B

The Gueitses argue that summary judgment dismissal of their negligence claim against WGCC was improper because Waldal's testimony established a genuine issue of material fact regarding whether WGCC acted without due care and thereby caused the Gueitses' property to flood. Liability for the movement of surface water is circumscribed by the common enemy doctrine. Currens v. Sleek, 138 Wn.2d 858, 861, 983 P.2d 626, 993 P.2d 900 (1999). Under the common enemy doctrine, landowners are shielded from liability for the disposal of surface water unless they (1) block a natural watercourse or natural drainway, (2) artificially collect and channel water onto their neighbors' land " 'in quantities greater than or in a manner different from the natural flow thereof,' " (the "channel and discharge" exception), or (3) fail to act " 'in good faith and with such care as to avoid unnecessary damage' " to neighboring properties when altering the flow of surface water (the "due care" exception). Borden v. City of Olympia, 113 Wn. App. 359, 367, 53 P.3d 1020 (2002) (quoting Currens, 138 Wn.2d 862-63). The Gueitses have argued the common enemy doctrine does not bar their negligence claim because either the channel and discharge or due care exceptions apply.

These exceptions to the common enemy doctrine apply to claims arising out of a landowner's alteration of the natural flow of surface water. Under the "channel and discharge" exception, landowners are prohibited from "creating an unnatural conduit," but may "direct diffuse surface waters into preexisting natural waterways and drainways." Currens, 138 Wn.2d at 862. Under the "due care" exception, "landowners who alter the flow of surface water on their property must

6

exercise their rights with due care by acting in good faith and by avoiding unnecessary damage to the property of others." Id. at 865. And, the evidence must be sufficient to support an inference that actionable negligence by WGCC was a proximate cause of their damage. Gaines v. Pierce County, 66 Wn. App. 715, 722, 834 P.2d 631 (1992). Cause in fact is established only if plaintiff's injury would not have occurred but for defendant's breach of duty. Id. at 722-723.

Cases interpreting the common enemy doctrine have generally found defendants potentially liable only where there is evidence to support an inference that defendant's alterations to the natural state of the land caused damage to plaintiff's property. In Currens, 138 Wn.2d at 859-60, summary judgment dismissal was improper where plaintiff's expert testified that defendant's clear cutting increased the flow of water onto plaintiff's property by three to twelve times the natural volume, leading to flooding. In DiBlasi v. City of Seattle, 136 Wn.2d 865, 870-871, 879, 969 P.2d 10 (1998), summary judgment dismissal was improper where plaintiff's expert testified that a landslide that damaged plaintiff's property would not have happened but for the concentration of surface water resulting from the defendant's construction activities. In Wilber Development Corp. v. Les Rowland Construction, Inc., 83 Wn.2d 871, 873, 876, 523 P.2d 186 (1974), overruled on other grounds by Phillips v. King County, 136 Wn.2d 946, 968 P.2d 871 (1998), summary judgment dismissal was improper where defendant's construction of storm drainage facilities resulted in water being "collected and deposited upon [plaintiff's] land in a different manner" than was natural and where plaintiff's expert testified that the change affected plaintiff's ability to drain the land.

In Gaines, 66 Wn. App. at 724, summary judgment dismissal was appropriate where plaintiffs failed to produce evidence that their property would not have flooded but for the defendant's road construction.

Washington courts have also ruled that the common enemy doctrine precluded liability in cases where the defendant landowner's actions altered the rate at which water arrived at the plaintiff's property but did not impact the natural flow or increase the total volume of water. In Trigg v. Timmerman, 90 Wn. 678, 681-682, 156 P. 846 (1916), the court found that the defendant landowner was not liable for flooding on plaintiff's land where the defendant constructed ditches along the land's natural drainage route that hastened the flow of water onto plaintiff's property but "did not result in any greater quantity of water reaching [plaintiff's] land than would have reached it by nature." In Wood v. City of Tacoma, 66 Wn. 266, 270, 119 P. 859 (1911), the court acknowledged that upslope construction by the defendant that merely delayed the progress of water onto plaintiff's land but did not result in more water reaching plaintiff did not give rise to liability.

The Gueitses argue, and Waldal's expert testimony suggests, that if the WGCC drainage system had been properly maintained, it would have drawn off a greater amount of the water from the 2020 storm, and the Gueitses' home potentially would not have flooded. But this assertion alone is insufficient to give rise to an inference that actionable negligence by WGCC in fact caused the Gueitses' injury. Without evidence supporting an inference that WGCC's alterations to the land caused a flow of water onto the Gueitses' property that would

not have happened had the land remained in its natural state, no exception to the common enemy doctrine can apply.

The parties agree that WGCC naturally receives runoff from the surrounding neighborhoods, and that the Gueits property was directly adjacent to the lowest part of WGCC. The Gueitses do not present evidence that any amount of stormwater would not have flowed onto the Gueitses' property but for WGCC's drainage system, and the evidence does not support such an inference. Waldal's testimony is confined to the question of whether the Gueitses' home would have flooded if WGCC's drainage system had been properly maintained and drawn off more water, and does not include an opinion as to whether flooding would have occurred if WGCC's drainage system had not existed and the land had been left in its natural state. The evidence in the record does not support an inference that WGCC's alteration to the flow of surface water caused the Gueitses' home to flood. Such an inference is required to support the Gueitses' negligence claim, and so summary judgment was appropriate.

The Gueitses additionally argue that WGCC was negligent in failing to warn them that WGCC's drainage system had become overwhelmed and that there was a risk of flooding. This, like the Gueitses' claim regarding WGCC's maintenance of its drainage system, is a negligence claim related to damage caused by surface water. Thus, the common enemy doctrine bars liability unless an exception is met. For the same reasons articulated above, no such exception applies, and the Gueitses' "failure to warn" claim fails.

9

C

The Gueitses also allege WGCC's conduct constituted a nuisance under RCW 7.48.010 and 7.48.120.  Where alleged nuisance is the result of the defendant's alleged negligent conduct, rules of negligence apply.  <u>Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.</u>, 115 Wn.2d 506, 527-28, 799 P.2d 250 (1990).  Because the Gueitses have not established that an exception to the common enemy doctrine applies to allow a negligence claim to proceed, summary judgment dismissal was appropriate.

III

The trial court's order dismissing the Gueitses' claims against Whidbey Golf and Country Club is affirmed.

_____
Birk, J.

WE CONCUR:

_____     _____
Díaz, J.                                                    Mann, J.

10