[No. 41353-1-II. Division Two. February 28, 2012.]

KIM LORD, *as Personal Representative, Petitioner*, v. PIERCE COUNTY, *Respondent*.

*Thomas J. Westbrook*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Cort O'Connor, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Since its adoption in 1896, the common enemy doctrine has long stood for a simple proposition: landowners may dispose of unwanted surface waters in any way they see fit, without liability for resulting damage to neighboring properties. Although Washington courts have created exceptions to this common law doctrine, we have never altered or addressed its basic function as a shield to liability. Petitioner Kim Lord now challenges this understanding of the common enemy doctrine.

¶2 Lord contends that in addition to shielding a property owner from liability, the doctrine also allows a landowner to build substantial flood prevention structures without acquiring, or attempting to acquire, permits as dictated by

county and state land use regulations. Specifically, Lord argues that the common enemy doctrine supersedes the portions of Titles 17A and 18E Pierce County Code (PCC) that require developmental permits in critical and flood-prone areas and that the doctrine justified his permitless construction of a large, earthen levee. We decline to expand the scope of the common enemy doctrine and affirm Pierce County's order that Lord remove the unpermitted levee.

## FACTS

¶3 Following significant flooding of the Puyallup River in January 2009, Lord sought to protect his property[1] for the upcoming 2009-2010 flood season by constructing an earthen levee. In July 2009, Lord contacted Michael Vanassa of Garrett Construction about the proposed work.[2] Under Lord's supervision, on July 22, Vanassa began clearing brush and debris on the property from a previous flood and, on August 24, began relocating existing, on-site materials to construct the levee.

¶4 A Pierce County sheriff's deputy visited the construction site on September 13 and advised Vanassa that the construction might be illegal. Although nearly complete, Vanassa ceased work on the project at that point. Vanassa was unaware that the project required permitting of any kind. Lord, on the other hand, was aware of permitting

---

[1] The property in question technically belongs to Lord's late wife, Barbara Winde. Lord acted as the personal representative of her estate throughout the events related to this appeal. No legal issues are present in this respect, but, at times, the record refers to the owner as either Winde or Lord, or to Lord as the personal representative of Winde's estate.

[2] Vanassa is not a professional engineer. He was already familiar with the property, having previously helped Lord build a temporary dike (which failed) during the January 2009 floods. Vanassa also helped Lord clean up the property after a 2006 flood during which Lord took no protective actions. Another major flood occurred in 1996, the first to damage the property. Lord's Federal Emergency Management Agency proof of loss for the January 2009 flood alone estimated the full cost of repair at over $92,000. Lord estimated flood insurance covered only half of his losses, though, as it did not provide for damage to outbuildings, streets, garages, or carports.

requirements, but he thought the levee would be exempt pursuant to emergency exceptions found in Titles 17A and 18E of the PCC. The next day, Lord brought in another contractor who finished the last 15 or 20 feet of the levee project.

¶5 On September 14, Pierce County's Service Response System received a complaint regarding the levee construction. In response, Pierce County Department of Planning and Land Services (PALS) Development Engineering Inspector Matt Shaw visited the property on September 17 and posted a stop work order/cease and desist notice at the site. Work on the levee was complete by that point. In October, PALS sent a correction notice/cease and desist order to Lord confirming the permitting violations and the "stop work" notice Shaw posted on September 17. The letter stated, in part,

> The illegal levee has been constructed in a Regulated Floodway, Title 18E.70.020 (B).2. Per Title 18E.70.040 (B), all structures, filling/grading, and encroachments are prohibited. Therefore, the levee must be removed, the area restored back to its pre-developed condition and all removed fill taken to an approved disposal site.

Clerk's Papers at 24 (emphasis omitted). The letter further indicated that a site development permit would be required, per Title 17A PCC (Ordinance 2008-59S), in order to remove the illegal levee and that such a plan would need to be prepared by a professional engineer licensed in the state of Washington. On October 16, Lord timely appealed the correction notice/cease and desist order pursuant to PCC 1.22.080 and .090.

¶6 On March 4, 2010, Pierce County Hearing Examiner Stephen J. Causseaux Jr. presided over a public hearing for Lord's appeal. Causseaux delivered his report and decision on April 20. In his conclusions, he addressed Titles 17A and 18E of the PCC as well as Lord's assertion that the common enemy doctrine justified the levee construction. In relation to PCC 18E.20.030(I), the examiner concluded that

[a]ppellant acknowledges that he did not consult with PALS before constructing his emergency levee, and therefore did not provide PALS the opportunity to review his actions to include the existence of the emergency and the reasonableness of the proposed actions. . . . The appellant therefore did not follow the procedures for an emergency exemption and violated Chapter 18E.20 PCC. Pierce County therefore properly issued the Stop Work Order and Correction Notice/Cease and Desist Order dated October 5, 2009.

Administrative Record (AR) at 14. And in conclusion 4, the examiner found that "[w]hile Subsection B [of PCC 17A.10-.050] authorizes emergency projects to protect life or property . . . the appellant's construction of a significant levee does not comply with either the purpose or scope of the exemptions set forth in Title 17A." AR at 15. Last, Causseaux concluded that "based upon RCW 86.12 and the adoption of flood control regulations by the Pierce County Council, the Examiner must interpret and enforce said regulations and cannot apply the Common Enemy Doctrine in a manner to amend or negate such regulations."[3] AR at 18-19.

¶7 On May 12, Lord appealed the hearing examiner's decision to the Pierce County Superior Court pursuant to ch. 36.70C RCW, the Land Use Petition Act (LUPA). He argued that both the administrative action issuing the correction notice/cease and desist order and the hearing examiner's decisions were in error. On September 29, the superior court issued an order on Lord's LUPA petition, affirming the hearing examiner's decision. Lord timely appeals the hearing examiner's findings and decision pursuant to RCW 36.70C.130.

---

[3] RCW 86.12.200 provides that the "county legislative authority of any county may adopt a comprehensive flood control management plan for any drainage basin that is located wholly or partially within the county."

## DISCUSSION

STANDARD OF REVIEW

 ¶8 LUPA governs judicial review of land use decisions in Washington. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 467, 61 P.3d 1141 (2003). When reviewing a land use decision, we stand in the same position as the superior court. *Griffin v. Thurston County Bd. of Health*, 137 Wn. App. 609, 616, 154 P.3d 296 (2007), *aff'd*, 165 Wn.2d 50, 196 P.3d 141 (2008). We review the factual record before the hearing examiner, the local jurisdiction's body or officer in this instance with the highest level of authority to make a determination concerning land use. *See* PCC 1.22.140(C) ("All land use decisions of the Examiner . . . shall constitute the final decision of the [Pierce County] Council and shall be appealable to a court of competent jurisdiction."); *see also Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assocs.*, 151 Wn.2d 279, 288, 87 P.3d 1176 (2004).

 ¶9 Lord, as the LUPA petitioner, carries the burden of establishing that the hearing examiner erred under at least one of LUPA's six standards of review. *See Pinecrest*, 151 Wn.2d at 288. Both parties agree the applicable standards in this instance are

> (b) [t]he land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise; [and]
>
> . . . .
>
> (d) The land use decision is a clearly erroneous application of the law to the facts.

RCW 36.70C.130(1). Whether the hearing examiner interpreted the law erroneously is a question of law we review de novo. *Satsop Valley Homeowners Ass'n v. Nw. Rock, Inc.*, 126 Wn. App. 536, 541, 108 P.3d 1247 (2005). We review whether the hearing examiner misapplied the law to the facts under

the "clearly erroneous" standard—" 'whether [this court is] left with a definite and firm conviction that a mistake has been committed.' " *City of Federal Way v. Town & Country Real Estate, LLC*, 161 Wn. App. 17, 37, 252 P.3d 382 (2011) (quoting *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006)).

COMMON ENEMY DOCTRINE

¶10 The central issue here is whether the common enemy doctrine justifies Lord's actions in building the unpermitted earthen levee. Lord contends that "[w]hile the line of current decisions upholding the common enemy doctrine have generally been related to issues of liability or inverse condemnation, there is no case law in this state limiting application of the doctrine to such situations." Br. of Appellant at 8-9. Lord further contends that if correctly applied, the common enemy doctrine would exempt his levee from Pierce County's storm water drainage infrastructure and flood hazard area regulations and permitting requirements. Because Washington's common enemy doctrine serves only as a defense to liability for damaging adjacent properties,[4] we affirm.

¶11 The common enemy doctrine first appears to have reached American shores in 1841 in the case of *Hooker v. New Haven & Northampton Co.*, 14 Conn. 146, 1841 WL 343, 1841 Conn. LEXIS 2. In that case, the Connecticut Supreme Court decided that a canal owner would be liable to a property owner damaged by excess waters escaping the canal. *Hooker*, 1841 WL 343, at *10, 1841 Conn. LEXIS 2, at *31-32. In a dissenting opinion, however, Justice Sherman recommended extending the English[5] concept of the sea

---

[4] As inverse condemnation cases address improper government takings and the determination of whether municipalities or governments are liable to affected property owners, it is reasonable to classify them as "liability" cases for purposes of this analysis.

[5] The English case at issue was *Rex v. Comm'rs*, (1828) 8 Barn. & C. 355 (K.B.), in which Lord Tenterden first coined the term "common enemy." We recently

being a "common enemy" to navigable waterways in the state to avoid the situation where

> "when any person sustains any damage, however remote or consequential, by *any turnpike road*, improvement of the navigation of a river . . . *or any other alteration of the existing state of things*, an action will lie. . . . Such a principle is alike opposed to common sense, common law, and adjudged cases."

*Hooker*, 1841 WL 343, at *17, 1841 Conn. LEXIS 2, at *56 (Sherman, J., dissenting) (quoting Lord Kenyon's opinion in *The Governor & Co. of the British Cast Plate Mfrs. v. Meredith*, (1792) 4 Term. R. 794 (K.B.)).

¶12 Washington first adopted the common enemy doctrine in 1896 in *Cass v. Dicks*, 14 Wash. 75, 44 P. 113 (1896). In *Cass*, the Washington Supreme Court held that "surface water, caused by the falling of rain or the melting of snow, and that escaping from running streams and rivers, is regarded as an outlaw and a common enemy against which anyone may defend himself, *even though by so doing injury may result to others.*" 14 Wash. at 78 (emphasis added). Importantly, *Cass* cemented a fundamental aspect of the common enemy doctrine; namely, that it is a defense to liability.

¶13 Early commentators, current legal works, and innumerable legal opinions confirm this. In his extensive treatise, *The Law of Waters and Water Rights*, Henry Philip Farnham explains,

> The extent to which the common-enemy doctrine has been carried in some jurisdictions is well illustrated by the Indiana case of *Cairo & V. R. Co. v. Stevens*, [73 Ind. 278 (1881),] where the court held that it may be laid down as a general rule that upon the boundaries of his own land, not interfering with any natural or prescriptive water course, an owner may erect such barriers as he may deem necessary to keep off surface water or overflowing floods coming from or across adjoining lands, *and*

---

discussed the origins of the common enemy doctrine further in *Grundy v. Brack Family Trust*, 151 Wn. App. 557, 213 P.3d 619 (2009), *review denied*, 168 Wn.2d 1007 (2010).

*for any consequent repulsion, turning aside, or heaping up of these waters to the injury of other lands, he will not be responsible.*

3 HENRY PHILIP FARNHAM, THE LAW OF WATERS AND WATER RIGHTS 2597-98 (1904) (emphasis added) (footnote omitted), *available at* http://books.google.com/books?id=_bxCAAAAYAAJ &printsec=frontcover&dq=law+of+waters+and+water+rights &hl=en&sa=X&ei=FHspT9b7EoqwiQLrt9WpCg&ved=0CD 8Q6AEwAA#v=onepage&q=law%20of%20waters%20and% 20water%20rights&f=false.[6] Or, as another commentator noted in 1915 in relation to the common enemy doctrine in Massachusetts, a "private owner has large powers and small liabilities with respect to surface water." Edwin H. Abbot, Jr., *Ways and Waters in Massachusetts*, 28 HARV. L. REV. 478, 489 (1915). More recently John W. Johnson writes in *United States Water Law: An Introduction* that the common enemy doctrine

> [t]reats surface water as a common enemy of all landowners and allows any necessary diversion to protect one's own property, *even if the water ultimately damages another person's property.* Most states that follow this doctrine have rules requiring landowners *to avoid acting in negligence* when diverting water from their lands.

JOHN W. JOHNSON, UNITED STATES WATER LAW: AN INTRODUCTION 90 (2008) (emphasis added).

---

[6] Farnham, incidentally, claims the "common-enemy rule is not the rule of the common law" but is, instead, the result of a number of jurisdictions erroneously following an 1875 New Jersey Supreme Court decision, *Union v. Durkes*, 38 N.J.L. 21, 22 (1875), which quoted Lord Tenterden's *Rex* decision in a misleading manner. *See* 3 FARNHAM, *supra*, at 2591-99; *see also The Common Enemy*, 1 CASE & COMMENT, Dec. 1894, at 1-2 ("The rule which regards surface water as a common enemy appears to have originated in Massachusetts . . . . But the rule is not called the common-law rule in that case which simply follows the reasoning of prior Massachusetts cases. Text-writers seem to have given it that name to distinguish it from the rule of the civil law. . . . That the 'common-law' rule as generally understood is not the rule in England is shown by the note to Gray *v.* McWilliams, [98 Cal. 157, 32 P. 976,] 21 L. R. A. 593."), *available at* http://books.google.com/ books?id=Mt8oAAAAYAAJ&pg=PT52&dq=Case+and+Comment,+the+Common +Enemy,+1894&hl=en&sa=X&ei=Qp0fT96wH9KqsAL4xui_Dg&ved=0CDAQ6AE wAA#v=onepage&q=Case%20and%20Comment%2C%20the%20Common%20Enemy %2C%201894&f=false.

¶14 That a landowner may employ the common enemy doctrine solely as a defense to liability is firmly grounded in Washington case law as well. In *Snohomish County v. Postema*, 95 Wn. App. 817, 822, 978 P.2d 1101 (1998), *review denied*, 139 Wn.2d 1011 (1999), for instance, Division One of this court refers to seeking "the shield of the common enemy doctrine." And, in *Currens v. Sleek*, 138 Wn.2d 858, 866-67, 983 P.2d 626, 993 P.2d 900 (1999), our Supreme Court is explicit in its liability analysis:

> *When determining liability under the common enemy doctrine*, the due care exception requires the court to look only to whether the landowner has exercised due care in improving his or her land, i.e., whether the method employed by the landowner minimized any unnecessary impacts upon adjacent land. Unlike the reasonable use rule, a landowner's duty under the common enemy doctrine is not determined by weighing the nature and importance of the improvements against the damage caused to one's neighbor. Rather, a landowner has an unqualified right to embark on any improvements of his or her land allowed by law, but must limit the harm caused by changes in the flow of surface water to that which is reasonably necessary.

(Emphasis added.) Even more recently, our Supreme Court discussed "whether the common enemy doctrine shielded the defendants from liability" in *Fitzpatrick v. Okanogan County*, 169 Wn.2d 598, 609, 238 P.3d 1129 (2010). In each of the nearly 50 cases where Washington appellate courts have addressed the common enemy doctrine, issues of liability have been a fundamental concern.[7]

---

[7] All three judicially created exceptions to the common enemy doctrine relate to liability as well. The first provides that a landowner who inhibits the flow of a natural watercourse or drainway may still be held liable for damage to neighboring properties. *Island County v. Mackie*, 36 Wn. App. 385, 388, 675 P.2d 607, *review denied*, 101 Wn.2d 1008 (1984). The second exception prohibits a landowner from artificially collecting water and then channeling it to their neighbors' land. *Colella v. King County*, 72 Wn.2d 386, 390, 433 P.2d 154 (1967). A third exception requires a property owner to exercise due care in improving his or her land to minimize unnecessary surface water impacts upon adjacent lands. *Currens*, 138 Wn.2d at 862.

¶15 Accordingly, because the common enemy doctrine serves only as a defense to liability, Lord has failed to show that the hearing examiner erroneously interpreted the law. Further, Lord's contention that the hearing examiner failed to properly apply the common enemy doctrine to the facts of his case is also without merit. Lord's case has nothing to do with his liability for diverting flood waters, and the common enemy doctrine does not apply.

PERMITTING REQUIREMENTS

¶16 Lord also contends that ch. 86.12 RCW and the flood control regulations Pierce County adopted under Titles 17A and 18E PCC do not supersede, abrogate, or eliminate the common enemy doctrine and, accordingly, the hearing examiner erred in enforcing these regulations without first applying the common enemy doctrine. But because Titles 17A and 18E PCC relate to building use and development, not liability, and are in no way repugnant to the common law, Lord's contention lacks merit.

¶17 Lord correctly notes that Washington courts have not abrogated the common enemy doctrine. In *Currens*, our Supreme Court explicitly declined to abandon the doctrine as doing so would be "inconsistent with this state's historic deference to property rights." 138 Wn.2d at 867. Further, our Supreme Court has held that a "law abrogates the common law when 'the provisions of a . . . statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force.'" *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 77, 196 P.3d 691 (2008) (alteration in original) (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973), *cert. denied*, 419 U.S. 808 (1974)). Lord is incorrect, however, in asserting that the statutes in question are in any way repugnant to the common enemy doctrine.

¶18 RCW 86.12.200 provides that counties may adopt a "comprehensive flood control management plan" that establishes "land use regulations that preclude the location of

structures, works, or improvements in critical portions of such areas subject to periodic flooding." RCW 86.12.200(3). Pierce County has created a number of ordinances, including Titles 17A and 18E PCC, to effectuate its comprehensive flood management plan. Title 17A PCC, entitled "Construction and Infrastructure Regulations — Site Development and Stormwater Drainage," states,

> Unless fully exempt from these Regulations, no person, party, firm, corporation, or entity shall do any grading, filling, clearing, excavating, or ditching, or alter a drainage course, or alter an approved stormwater drainage system, or create an impervious surface, or any development or redevelopment activity unless the work is in accordance with a valid site development permit from the County issued pursuant to the provisions of these Regulations.

PCC 17A.10.070(B)(1). Title 18E PCC, the portion of the PCC devoted to developmental regulations in "critical areas" (like floodways), provides,

> A. Unless the requirements of this Title are met, Pierce County shall not grant any approval or permission to alter the condition of any land, water, or vegetation, or to construct or alter any structure or improvement regulated through the following: building permit, commercial or residential; binding site plan . . . or any subsequently adopted permit or required approval not expressly exempted by this Chapter.
>
> B. The following activities are regulated within critical fish and wildlife habitat areas, wetlands, aquifer recharge areas, landslide hazard areas, erosion hazard areas, *flood hazard areas*, and/or their buffers unless exempted. . . .
>
> 1. Removing, excavating, disturbing, or dredging soil, sand, gravel, minerals, organic matter, or materials of any kind;
>
> . . . .
>
> 5. Constructing, reconstructing, demolishing, or altering the size of any structure or infrastructure;
>
> 6. Altering the character of a regulated area by destroying or altering vegetation through clearing, harvesting, [or] cutting. . . .

. . . .

10. The creation of impervious surfaces.

PCC 18E.20.020 (emphasis added).

¶19 Both ordinances relate to land use permitting, and both derive authority from the Washington Legislature. RCW 86.12.200. Neither ordinance relates to liability or, specifically, to emergencies. Pierce County has not abrogated the common enemy doctrine in adopting these ordinances. When confronted with imminent flooding, property owners may still rely on this state's common enemy jurisprudence to shield them from liability if their temporary flood abatement measures damage the property of others. *See, e.g., Halverson v. Skagit County*, 139 Wn.2d 1, 14, 983 P.2d 643 (1999). When opting to build substantial structures in floodplains, however, property owners must comply with permitting requirements. This idea is not new. While discussing the "due care" exception to the common enemy doctrine, the *Currens* court, for instance, explained that

> [w]hat this means in practical terms is that landowners may improve their land with impunity (*subject to local land use and permitting requirements*) and are not liable for damage . . . so long as the landowners act in good faith and do not damage adjacent property in excess of that called for by the particular project.

138 Wn.2d at 864 (emphasis added).

¶20 In arguing for unbridled discretion in protecting his property and/or building on it, Lord does not appear to be arguing for application of the common enemy doctrine. Instead, his arguments are focused on a return to the ancient common law doctrine of *cujus est solum ejus est usque ad coelum* ("[t]he person who owns the soil owns up to the sky"[8]). But in 1946, the United States Supreme Court abrogated this doctrine, declaring, "It is ancient doctrine that at common law ownership of the land extended to the

---

[8] BLACK'S LAW DICTIONARY 1824 (9th ed. 2009).

periphery of the universe—*Cujus est solum ejus est usque ad coelum.* But that doctrine has no place in the modern world." *United States v. Causby*, 328 U.S. 256, 260-61, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946) (footnote omitted); *see also Cheskov v. Port of Seattle*, 55 Wn.2d 416, 348 P.2d 673 (1960). The common enemy doctrine never had so broad a scope. Even the *Cass* court in 1896 stressed,

> If one *in the lawful exercise of his right to control, manage or improve his own land,* finds it necessary to protect it from surface water flowing from higher land, he may do so and if damage thereby results to another, it is damnum absque injuria. . . .
>
> . . . *The respondents have done no illegal act* and therefore ought not to be compelled to undo what they have done at great expense and as a means of self-protection.

14 Wash. at 78, 82 (emphasis added) (italics omitted). Here Lord, unlike the defendants in *Cass*, performed an illegal act by constructing an unpermitted levee in violation of Pierce County's flood control regulations.

¶21 Accordingly, because Pierce County's flood control regulations relate to authorized land use permitting and do not abrogate or amend the common enemy doctrine, Lord has failed to show that the hearing examiner erroneously interpreted the law.

PERMITTING EXEMPTIONS

¶22 Last, Lord contends that the hearing examiner misapplied the permitting exemptions of Titles 17A and 18E PCC to the facts of this case. In his opening brief, Lord states that he appealed the correction notice/cease and desist order because his actions were "allowed under the PCC as an exemption under PCC 17A.10.050(B) and 18E.20.030([I])." Br. of Appellant at 6. He also claims that "[t]here was no evidence presented to the Hearing Examiner to indicate [his] actions were not proper or prudent under the circumstances. There was substantial evidence

that his actions were prudent." Br. of Appellant at 8. This is the extent to which Lord argues this issue on appeal. He provides no legal support or justification showing how PCC 17A.10.050(B) and 18E.20.030(I) permitted construction of his levee or why the hearing examiner erred in refusing to so find. RAP 10.3(a) ("The brief of the appellant or petitioner should contain . . . (6) [t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."). Accordingly, we do not address this issue further as we do not consider arguments unsupported by citation to relevant authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

¶23 Because the common enemy doctrine does not exempt a landowner from permitting requirements when permanently constructing major projects in critical and flood-prone areas, we affirm Pierce County's order that Lord remove the unpermitted levee.

WORSWICK, A.C.J., and ARMSTRONG, J., concur.

Review denied at 174 Wn.2d 1015 (2012).