IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARVIN ENTEL, JOYCE UPTMOR, and CAROLE MCDOWELL, | ) ) ) | No. 39563-4-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| ASOTIN COUNTY, | ) ) | |
| Appellant. | ) | |

COONEY, J. — Marvin Entel, on behalf of Carole McDowell and Joyce Uptmor

(Developers), submitted a preliminary subdivision application to Asotin County

(County). The County approved the application conditioned on the addition of a

secondary fire access road. The Developers appealed to the superior court, arguing that

the requirement was an unlawful indirect tax in violation of RCW 82.02.020, an

unconstitutional taking, and violative of their substantive due process rights. The

superior court agreed the secondary fire access road requirement was an unlawful indirect tax in violation of RCW 82.02.020 and concluded the County could not require that the Developers build the secondary fire access road.

The County appeals, arguing that: the International Fire Code (IFC)[1] authorizes the County to require the Developers construct the secondary fire access road; the requirement is not an indirect tax, does not constitute an unconstitutional taking, and is not violative of the Developers' substantive due process rights; and requiring the road was a legitimate exercise of the County's police power. We agree with the County and reverse.

BACKGROUND

In 2021, the Developers submitted a preliminary subdivision application to the County for a housing development called Grandview Ridge. The application sought to divide a 73.395-acre parcel into six lots. The application included plans for the addition of a secondary road connecting Grandview Ridge to Critchfield Road, which is a paved road south of Grandview Ridge. To the north, Grandview Ridge connects with West Grandview Drive. West Grandview Drive provides ingress and egress to Grandview Ridge and is the sole carriageway for the residents of over 30 other homes in the area. The site of Grandview Ridge has steep slopes on all sides.

---

[1] Int'l Code Council, International Fire Code (2021), https://codes.iccsafe.org/content/IFC2021P2.



Approximate location of Grandview Ridge. The larger "loop" in the northern portion of the inset is West Grandview Drive while the road to the south is Critchfield Road.



Proposed secondary fire access road connecting Grandview Ridge to Critchfield Road.

HEARINGS AND APPROVAL OF GRANDVIEW RIDGE

Shortly after the application for Grandview Ridge was submitted, the Asotin County Planning Commission (Commission) held public hearings on the application. Prior to the hearings, the county planner received a comment letter from Noel Hardin, Fire Chief of Asotin County Fire District 1. In the letter, Chief Hardin expressed his concerns about access to Grandview Ridge in the event of a fire. Chief Hardin wrote, "[W]e see that [the Developers] have proposed a fire access road that would connect with Critchfield Road, that would be a requirement." Clerk's Papers (CP) at 38. The stated purpose of the secondary fire access road is to allow "fire apparatus [to] access roads/driveways and [as a] fire apparatus turn around area." CP at 38.

At the public hearing before the Commission, Mr. Entel confirmed that the secondary fire access road would be "feasible" but "expensive." CP at 279. Mr. Entel also mentioned that the road "would be a gated roadway. It'd be basically a private road, but gated." CP at 305. The road would be owned and maintained by the owner of "lot 6." CP at 229.

Members of the public and the Commission chair commented that wildfires are an issue in the area of Grandview Ridge. Chief Hardin advised that "fire danger is obviously an issue in there" and that fighting the fires can be "challeng[ing]" in that area. CP at 303. He recalled a recent fire near Critchfield Road that "race[d] uphill." CP at 303. He noted that fighting wildfires in the area of Grandview Ridge can be hard,

4

especially when they are "wind-driven." CP at 304. Chief Hardin commented that the terrain, namely the steep hillsides, makes getting fire personnel to a wildfire in the area difficult.

Chief Hardin informed the Commission that West Grandview Drive is the only road that provides access to Grandview Ridge. He asked, "[I]f there were a traffic accident or we had to block off for a fire on Grandview and we needed to move people in and out, you know, how would we do that?" CP at 307. The solution proffered by Chief Hardin was to adopt the proposal in the application that a road be constructed connecting Critchfield and West Grandview Drive. This, according to Chief Hardin, would both "meet international fire code" and provide emergency access to Grandview Ridge. CP at 304. In urging the Commission to condition approval of the development on a secondary access road, Chief Hardin made his intent clear, "But again, that area we're concerned with just accessing [Grandview Ridge], period." CP at 306.

The Commission ultimately voted to recommend approval of the Grandview Ridge development to the Board of County Commissioners (Board), conditioned on the Developers' construction of the secondary fire access road as proposed in their application.

A few weeks after the Commission's decision to recommend the Board approve the application, Mr. Entel sent a letter to the County arguing that the Developers should not be required to construct the secondary fire access road. He predicted the matter

would "end in litigation." CP at 170. A letter sent to the Board from counsel for the

Developers noted that the road would cost around "$500,000" to construct and, provided

the County included the requirement, budgetary restraints would prevent the Developers

from developing Grandview Ridge. CP at 23. On February 22, 2022, the Board voted to

approve Grandview Ridge. The Board's conditions of approval mandated that the

Developers build an "emergency access road [connecting to] Critchfield Road." CP at

200.

The Board later issued written findings and conclusions noting that IFC § 503 and

IFC Appendix D § D107 authorized the County to require construction of the secondary

fire access road. In part, the Board found:

11. The secondary road access between the development and Critchfield
Road as proposed by the applicant on design drawings of record herein,
including dated September 10, 2021, is appropriate and should be
required for adequate public safety and for adequate safety for first
responders. The proposed development site is on a ridge/promontory
with steep slopes and limited existing access. The area is prone to high
fire risk due to typical prevailing winds (particularly in the hot, dry,
summer months), upslope fire effect, and fast burning fuels from
nearby open lands. Currently the sole road qualifying as a suitable fire
apparatus access road is Grandview Drive, which could be blocked or
impaired by vehicle congestion in the event of a fire.

12. The public health, safety, and welfare, as well as compliance with the
terms of the IFC and the Asotin County Code, require the development
of secondary access between the development and Critchfield Road.
This road connection is a minimum requirement for assuring that
appropriate provisions are made for the public health, safety, and
welfare.

CP at 199.

LAND USE PETITION ACT (LUPA), CHAPTER 36.70C RCW, APPEAL

The Developers timely filed an amended LUPA petition in the superior court. In their petition, the Developers argued that the secondary fire access road requirement was an unlawful indirect tax in violation of RCW 82.02.020, an unconstitutional taking, and violative of their substantive due process rights. The superior court agreed that the secondary fire access road requirement was an unlawful indirect tax in violation of RCW 82.02.020. The court also concluded that the County erroneously interpreted IFC Appendix D § D107, as allowing it to require the Developers build the secondary fire access road.

The County appeals.

ANALYSIS

In reviewing a land use decision, this court stands in the same position as the superior court and limits its review to the record created before the hearing examiner. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011); *Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assoc.*, 151 Wn.2d 279, 288, 87 P.3d 1176 (2004); RCW 36.70C.130.

"LUPA provides the exclusive means for judicial review of a land use decision (with the exception of those decisions separately subject to review by bodies such as the growth management hearings boards)." *Phoenix Dev.*, 171 Wn.2d at 828 (citing *Woods*

*v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007)). This court may reverse the

hearing examiner if the Developers establish at least one of the six standards set forth in

RCW 36.70C.130(1):

> (1) The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70C.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
>
> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1)(b) does not require the court to give complete deference, but

rather, "'such deference as is due.'" *Ellensburg Cement Prods., Inc. v. Kittitas County*,

179 Wn.2d 737, 753, 317 P.3d 1037 (2014)). Whether the hearing examiner interpreted

the law erroneously is a question of law this court reviews de novo. *Lord v. Pierce

County*, 166 Wn. App. 812, 818, 271 P.3d 944 (2012).

When reviewing a challenge to the sufficiency of the evidence under

RCW 36.70C.130(1)(c), "we view facts and inferences in a light most favorable to the

8

party that prevailed in the highest forum exercising fact-finding authority." *Phoenix Dev.*, 171 Wn.2d at 828-29. "Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true." *Id.* at 829 (citing *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

A finding is clearly erroneous for purposes of RCW 36.70C.130(1)(d) when, although there is evidence to support it, the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Phoenix Dev.*, 171 Wn.2d at 829.

Whether a decision is outside the jurisdiction of the body or officer making the decision under RCW 36.70C.130(1)(e), and whether a land use decision violates a party's constitutional rights under RCW 36.70C.130(1)(f), are questions of law that this court reviews de novo. *Id.* at 828.

WHETHER RCW 82.02.020 IS IMPLICATED AND, IF SO, WHETHER THE SECONDARY FIRE ACCESS ROAD REQUIREMENT VIOLATES IT

The Developers contend the Board's land use decision was an erroneous interpretation of the law under RCW 36.70C.130(1)(b) because the secondary fire access road is an indirect tax and therefore violates RCW 82.02.020. They also argue that the decision was outside the authority of the County under RCW 36.70C.130(1)(e) because RCW 82.02.020 prohibits counties from imposing indirect taxes on development of land. The County counters that RCW 82.02.020 is inapplicable because the secondary fire

9

access road is not an indirect tax nor a dedication of land. We agree with the County in part. Conditioning approval of the Development on the construction of a secondary fire access road does not constitute a tax under RCW 82.02.020. Because it is not a tax, the dedication of land exception under RCW 82.02.020 is not implicated.

"RCW 82.02.020 generally provides, with some exceptions, that the state preempts the field of imposing certain taxes." *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 753, 49 P.3d 867 (2002), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). In relevant part, RCW 82.02.020 states, "Except as provided in . . . RCW 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on . . . the development, subdivision, classification, or reclassification of land." As exceptions to this general prohibition, RCW 82.02.020 "does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply."

The statute "requires strict compliance with its terms." *Isla Verde*, 146 Wn.2d at 755. A tax, fee, or charge, whether direct or indirect, "imposed on development is invalid unless it falls within one of the exceptions specified in the statute." *Id.* "The burden to prove that a condition is reasonably necessary as a direct result of the proposed

development is on the governmental entity imposing the requirement," here, the County. *Citizens All. for Prop. Rights v. Sims*, 145 Wn. App. 649, 657, 187 P.3d 786 (2008).

The threshold question is whether the requirement that the Developers construct a secondary fire access road is a "tax, fee, or charge," which is expressly prohibited by RCW 82.02.020. If the requirement is a "tax, fee, or charge" under RCW 82.02.020, the second question is whether the requirement falls within one of the exceptions to the statute.

In asserting that the secondary fire access road requirement constitutes an indirect tax, the Developers repeatedly argue that the County is forcing them to remedy an issue that predated their proposed development. The Developers cite *Southwick, Inc. v. City of Lacey*, 58 Wn. App. 886, 795 P.2d 712 (1990), for the proposition that "[s]hifting of a general social cost onto a developer is a tax." Br. of Resp'ts at 34.

In *Southwick*, we analyzed whether conditions imposed on Southwick's expansion of its cemetery and funeral home complex constituted a tax in violation of RCW 82.02.020. 58 Wn. App. at 889-90. There, the conditions included street improvements, installation of fire sprinklers and a fire alarm system, and submission of plans to the public works department. In *Southwick*, we concluded that the required conditions were not taxes because they were "directly tied to the property in question and [were] not aimed at general social ills." *Id.* at 890. Accordingly, "'[i]f the fees are merely tools in

11

the regulation of land subdivision, they are not taxes.'" *Id.* (quoting *Hillis Homes v. Snohomish County*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982)).

Similarly, here, the primary reason the County requires construction of the secondary fire access road is for fire apparatus and personnel to enter the area in the event of a fire. The only stated basis in the record for the secondary fire access road is for the protection of the residents and structures of Grandview Ridge. If the property remains undeveloped and uninhabited, there is no need for a secondary means of ingress and egress as the area remains lacking of lives and structures in need of protection. Due to the Developers' desire to develop the land, coupled with the high fire danger in the area, access for emergency vehicles into Grandview Ridge is imperative.

Chief Hardin voiced to the Commission that the need for a secondary fire access road is directly tied to the development of Grandview Ridge. Before the Commission, Chief Hardin commented that if a fire or traffic accident were to block West Grandview Drive, emergency services would need a way to move people in and out of Grandview Ridge. He also opined that the hilly terrain of Grandview Ridge makes it difficult to get to the area quickly in case of a fire or other emergency.

Due to the steep terrain and limited ingress and egress to Grandview Ridge, a secondary fire access road is reasonably necessary to mitigate a direct impact that is a consequence of the proposed development. The secondary fire access road condition is directly tied to the property and, although a secondary benefit may be present, it is not

12

aimed at resolving general social ills. Because the condition is merely a tool in the regulation of the subdivision's development, it is not a tax under RCW 82.02.020. The Board's decision does not amount to an erroneous interpretation of the law.

Following approval of the development, conditioned on construction of the secondary fire access road, the Developers argued to the Board that construction of the road would cost around "$500,000." CP at 23. This, according to the Developers, would constitute a budgetary restraint, preventing them from developing Grandview Ridge. However, "[w]hile fulfillment of the conditions will require the expenditure of money, cost alone does not make the requirements a tax." *Southwick*, 58 Wn. App. at 890.

In addition to arguing that requiring the construction of a secondary fire access road is not a tax, the County argues at length that the requirement is also not a dedication of land. Because the Developers are not asserting the dedication of land exception to RCW 82.02.020, and we concluded the requirement is not a tax, the County's logorrhea on the issue is inconsequential.

WHETHER THE REQUIREMENT THAT A SECONDARY FIRE ACCESS ROAD BE BUILT CONSTITUTES A TAKING

The Developers seek relief under RCW 36.70C.130(1)(f), arguing the requirement that they build a secondary fire access road is an unconstitutional taking under the Fifth Amendment to the United States Constitution. The Developers simply state that "[t]here is no proportionality between what is being asked of the [Developers] and the impact

Grandview Ridge will have, therefore the secondary access road requirement is a taking." Br. of Resp'ts at 21. We disagree.

The takings clause of the Fifth Amendment states, "[N]or shall private property be taken for public use, without just compensation." Similarly, article I, section 16 of the Washington Constitution provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made."

When a land use decision is challenged under both takings and substantive due process, we first examine the takings issue. *Guimont v. Clarke*, 121 Wn.2d 586, 594, 854 P.2d 1 (1993), *abrogated on other grounds by Yim*, 194 Wn.2d 682. If the land use decision survives the takings analysis, then the court determines whether it violates substantive due process. *Id.* "[A]n exercise of the police power protective of the public health, safety, or welfare cannot be a taking requiring compensation." *Orion Corp. v. State*, 109 Wn.2d 621, 646, 747 P.2d 1062 (1987), *abrogated on other grounds by Yim*, 194 Wn.2d 682.

The Developers rely on *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994). Where government issues a land use permit on condition that the applicant dedicate land to public use, the government must show an "essential nexus" between a "legitimate state interest," and the condition imposed. *Nollan*, 483 U.S. at 837. Additionally, in order to satisfy the Fifth Amendment, "the

government must establish that its proposed condition is roughly proportional to the impact the proposed development will have on the public problem." *Benchmark Land Co. v. City of Battle Ground*, 94 Wn. App. 537, 545, 972 P.2d 944 (1999) (citing *Dolan*, 512 U.S. at 391). This requires "some sort of individualized determination that the required dedication is related both in nature and extent to the proposed development's impact." *Dolan*, 512 U.S. at 375.

In *Dolan*, the owner of a building sought to remove the building and replace it with a larger one and expand the parking lot. The city of Tigard, Oregon, conditioned approval on the owner of the building dedicating a portion of the property lying within the 100-year floodplain for improvement of a storm drainage system and on her dedicating a portion of land adjacent to the floodplain as a pedestrian pathway. The United States Supreme Court concluded that these requirements constituted a taking.

In *Nollan*, the Nollans acquired a California oceanfront lot and sought to construct a home on it. When they sought the necessary permitting, the California Coastal Commission required that they dedicate an easement for public use across the beach portion of their lot. The United States Supreme Court found there was no "essential nexus" between the easement and any public problem created or exacerbated by the Nollans' new house. 483 U.S. at 837. Therefore, it concluded that the Commission could not exact the easement without compensation.

15

Here, the Developers attempt to frame the requirement that they construct a private road to assist fire personnel in reaching Grandview Ridge in the event of an emergency as a governmental taking. Unlike the facts in both *Nollan* and *Dolan*, here it is undisputed that the County is not requiring the Developers to convert any of their property to the government for public or private use. Instead, approval of the development has been conditioned upon the Developers constructing a private secondary fire access road that would remain under the ownership and control of the owner of lot 6. The secondary fire access road requirement is not an unconstitutional taking.

In addressing the Developers' *Nollan*/*Dolan* proportionality argument, we find *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702-03, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999), persuasive. In *City of Monterey*, the Supreme Court held the *Dolan* proportionality test "was not designed to address, and is not readily applicable to, the much different questions arising where . . . the landowner's challenge is based not on excessive exactions but on denial of development." *Id.* at 703. Stated otherwise, a *Nollan/Dolan* analysis is unnecessary when the facts fail to establish the presence of a dedication of land, an exaction in lieu of a dedication, a taking, or an easement.

Indeed, many conditions imposed on new developments come at a substantial cost to developers, but that does not mean the conditions ascend to a governmental taking (e.g., water/sewer improvements, mandatory setbacks, road improvements). Because the County has undisputedly not conditioned approval of the Developers' application on the

16

County taking or damaging any of the Developers' property for public or private use, *Nollan* and *Dolan* are both unpersuasive and inapplicable in this context.

To the extent the Developers argue the cost of constructing a secondary fire access road is disproportionately high compared to their budget and the size of the development, we find such an assertion unpersuasive. *See Southwick*, 58 Wn. App. at 890. The Developers have not provided any authority that extends the *Nollan*/*Dolan* proportionality test to a developer's budget compared to the cost of complying with regulatory conditions. Moreover, such a holding would endow developers with the option of avoiding regulatory safety measures by simply minifying their anticipated development costs.

The Developers next argue the secondary fire access road requirement deprives them of all economically viable use of their property. We disagree.

The Developers can only show an unconstitutional taking has occurred by "establishing that the challenged regulation destroys any fundamental attribute of ownership, including the right to possess, to exclude others, or to make economically viable use of property." *Ventures Nw. Ltd. P'ship v. State*, 81 Wn. App. 353, 363, 914 P.2d 1180 (1996). "The mere denial of a permit for one particular use does not establish the absence of any economically viable use; a regulation that may impact the property's highest and best use is not a taking." *Id.* at 366 (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384, 47 S. Ct. 114, 71 L. Ed. 303 (1926)).

17

The Developers argue that the secondary fire access road requirement deprives them of all economically viable use of their property. They argue the property will remain without value if they cannot develop it because it will continue to be an open field. The Developers' claim fails for a number of reasons.

First, the County has not deprived the Developers of the opportunity to develop the property as a subdivision. The Developers could modify their budget to prioritize the road, seek other sources of revenue allowing for construction of the road, or sell the land to someone who possesses sufficient resources to develop the property. The Developers' budgetary constraints do not convert the condition into a taking. Secondly, the Developers currently enjoy the same use of the property as they did before the County's secondary fire access road requirement. The County's condition does not affect the Developers' property unless they decide to develop the land into a subdivision. Thirdly, there is nothing in the record demonstrating that the Developers have sought any other use of the property. Thus, the record lacks any showing that all economically viable use of the property has been extinguished due to the secondary fire access road condition.

WHETHER THE REQUIREMENT THAT A SECONDARY FIRE ACCESS ROAD BE BUILT VIOLATES THE DEVELOPERS' DUE PROCESS RIGHTS

Because the land use decision survives the takings analysis, we proceed to the substantive due process analysis. *Guimont*, 121 Wn.2d at 594. The Developers contend the requirement that they construct a secondary fire access road as a condition of

approval violates their substantive due process rights. U.S. CONST. amend. V, XIV; RCW 36.70C.130(1)(f). We disagree.

Even if a land use decision is not a taking, the decision must satisfy constitutional due process reasonableness analysis. *Kahuna Land Co. v. Spokane County*, 94 Wn. App. 836, 842, 974 P.2d 1249 (1999); U.S. CONST. amend. V, XIV. In making this determination, we engage in a three-prong analysis: "(1) Is the decision aimed at achieving a legitimate public purpose; (2) does it use means that are reasonably necessary to achieve that purpose; and (3) is it unduly oppressive to the landowner?" *Id.* at 842.

The "unduly oppressive" test is not interpreted as requiring heightened scrutiny. *Yim*, 194 Wn.2d at 694 (internal quotation marks omitted). Land use regulations are not subject to heightened scrutiny; instead, rational basis review applies. *Id.* at 698. Land use regulations violate substantive due process only if they fail to serve any legitimate governmental objective, making it arbitrary or irrational. *Id.* "'[T]hat a statute is unduly oppressive is not a ground to overturn it under the due process clause.'" *Id.* at 696 (quoting *Salstrom's Vehicles, Inc. v. Dep't of Motor Vehicles*, 87 Wn.2d 686, 693, 555 P.2d 1361 (1976)).

The County argues that the Developers' substantive due process rights are not violated because the secondary fire access road serves the legitimate governmental purpose of ensuring adequate ingress and egress to Grandview Ridge in the event of a fire. The County further contends the road is reasonably necessary to achieve that

purpose. The Developers concede that "fire risk is a serious public problem." Br. of Resp'ts at 31. The Developers primarily argue that the secondary fire access road requirement is unduly oppressive and that "[u]nduly oppressive requirements constitute violations of substantive due process." Br. of Resp'ts at 32. The Developers are incorrect. Even assuming that the secondary fire access road requirement is unduly oppressive, this does not mean that the Developers' due process rights are violated. *Yim*, 194 Wn.2d at 696.

Here, the secondary fire access road requirement serves the legitimate governmental purpose of protecting the health and safety of the residents of Grandview Ridge by allowing adequate ingress and egress in the event of an emergency. The Developers do not dispute this. Instead, the Developers argue that there are less oppressive means of protecting Grandview Ridge, like requiring built-in sprinkler systems in the homes built in Grandview Ridge. The Developers' argument is unpersuasive. First, the record lacks any facts suggesting sprinkler systems on a home-to-home basis are a reasonable alternative for fire personnel and fire apparatus. Secondly, the record is replete with facts showing that Grandview Ridge is at risk of being consumed by fast moving, wind-driven, uphill wildfires.

The "unduly oppressive" prong of the three-part analysis predominates the Developers' argument. *Kahuna Land*, 94 Wn. App. at 842. But, even if the secondary

fire access road requirement is unduly oppressive, that does not necessarily constitute an encroachment into the Developers' substantive due process rights. The Developers do not and cannot show that the secondary fire access road requirement does not pass rational basis review. Thus, the Developers' substantive due process rights are not violated.

WHETHER THE IFC AUTHORIZES THE REQUIREMENT OF A SECONDARY FIRE ACCESS ROAD

The County argues that IFC § 503 and Appendix D § D107 authorize it to require the Developers construct a secondary fire access road as a condition of approval of Grandview Ridge. The Developers contend the County erroneously interpreted IFC Appendix D § D107 and that the County improperly applied IFC § 503 in a way that violates Washington law (RCW 82.02.020) and the federal constitution (U.S. CONST. amend. V). RCW 36.70C.130(1)(b), (f). Because we have already determined that RCW 82.02.020 is not implicated and that the secondary fire access road requirement is not a taking nor violative of the Developers' substantive due process rights, the Developers' argument regarding IFC § 503 necessarily fails. Thus, because IFC § 503 independently authorizes the secondary fire access road requirement, we need not reach the closer question of whether IFC Appendix D § D107 authorizes the condition.

The IFC has been adopted by reference in each of Washington's 39 counties. RCW 19.27.031(3). IFC § 503 is titled "FIRE APPARATUS ACCESS ROADS." Int'l

21

Code Council, International Fire Code (2021), https://codes.iccsafe.org/content /IFC2021P2. IFC § 503.1 states: "Fire apparatus access roads shall be provided and maintained in accordance with Sections 503.1.1 through 503.1.3." IFC § 503.1.2, titled "Additional access," provides: "The fire code official is authorized to require more than one fire apparatus access road based on the potential for impairment of a single road by vehicle congestion, condition of terrain, climatic conditions or other factors that could limit access." (Emphasis omitted.)

Chief Hardin reported to the Commission that "fire danger is obviously an issue" in the area of Grandview Ridge. CP at 303. He also testified that:

> [W]e had a fire down on Critchfield . . . a couple, three years ago, and, you know, the fire's obviously racing uphill. We have to go all the way to 22nd, back down 6th, back around, you know, to get around, you know, to get around on top to protect structures that way. And it's a challenge in a wind-driven fire.
> . . . .[W]e need to be able to get there, you know, quickly and not have to go four or five miles just to get—to get to it when there are roads that could be connected together.
> . . . .
> I mean, if it's a—if there were a traffic accident or we had to block off for a fire on Grandview and we needed to move people in and out, you know, how would we do that?

CP at 303-07.

Before the Commission, the Developers failed to rebut any of Chief Hardin's safety concerns surrounding the prospective residents and structures of Grandview Ridge. Based on Chief Hardin's presentation, the Board found:

22

> The proposed development site is on a ridge/promontory with steep slopes and limited existing access. The area is prone to high fire risk due to typical prevailing winds (particularly in the hot, dry, summer months), upslope fire effect, and fast burning fuels from nearby open lands. Currently the sole road qualifying as a suitable fire apparatus access road is Grandview Drive, which could be blocked or impaired by vehicle congestion in the event of a fire.

CP at 199.

Chief Hardin's comments demonstrated that the location of Grandview Ridge, the danger of wind-driven, up-slope fires, as well as the potential for vehicle congestion on West Grandview Drive made secondary access to the proposed development necessary. IFC § 503.1.2 explicitly authorizes that an additional fire access road be required based on "potential for impairment of a single road." Thus, the fire code authorized the County to condition Grandview Ridge's approval on the construction of a secondary fire access road.

The Developers argue that the County applied IFC § 503 in a way that violates Washington law and the Constitution. Because we already determined that the secondary fire access road requirement does not implicate RCW 82.02.020, nor does it violate the Constitution, the Developers' argument fails.

Whether IFC Appendix D § D107 authorizes the secondary fire access road is a closer question. However, because IFC § 503 independently authorized the County to condition approval on construction of a secondary fire access road, we need not analyze whether IFC Appendix D § D107 also authorized the County to require the road.

WHETHER REQUIRING THE FIRE ACCESS ROAD IS A LEGITIMATE EXERCISE OF THE COUNTY'S POLICE POWER

The Developers argue that requiring the construction of a secondary fire access road is not a legitimate exercise of the County's police power. This contention is premised on the Developers' claims that the development does not necessitate a secondary road, that requiring the road amounts to an unconstitutional taking, and the condition is violative of RCW 82.02.020. Because we already concluded that the road does not amount to an unconstitutional taking nor is it in violation of RCW 82.02.020, we only address the Developers' first contention—whether the County's police power allows it to decide whether the development necessitates an additional road and condition the approval of the application on the construction of a road.

RCW 58.17.110(2) states in relevant part, "A proposed subdivision and dedication shall not be approved unless the city, town, or county legislative body makes written findings that: (a) Appropriate provisions are made for the public health, safety, and general welfare . . . ." The County argues that the secondary fire access road requirement was an appropriate measure to ensure the health and safety of the public in case of a fire near the proposed development. We agree.

"It is well settled that the enactment of reasonable ordinances regarding the protection of the lives and safety of persons, as well as the protection of property against fire, is within the police power of a municipality." *Hass v. City of Kirkland*, 78 Wn.2d

24

929, 932, 481 P.2d 9 (1971), *abrogated on other grounds by Yim*, 194 Wn.2d 682. "[A]

police power action must be reasonably necessary to serve a legitimate state interest" in

order to survive a substantive due process challenge. *Orion*, 109 Wn.2d at 646-47.

Further, "an exercise of the police power protective of the public health, safety, or

welfare cannot be a taking requiring compensation." *Id*. at 646.

In requiring the construction of a secondary fire access road, the County's intent

was to provide for the health, safety, and welfare of the residents of Grandview Ridge

through appropriate fire protection. This is a reasonable exercise of the County's police

power. Further, IFC § 503 explicitly allows the fire chief to determine when another fire

access road is necessary. Chief Hardin made clear that the area is prone to fires and

blockage of West Grandview Drive would make reaching Grandview Ridge difficult.

Based on the fire code and Chief Hardin's comments, the County acted reasonably, and

within its police powers, in conditioning approval of the development on the construction

of a secondary fire access road.

ATTORNEY FEES

The Developers request their attorney fees on appeal under RCW 4.84.370. The

statute reads, in relevant part:

> (1) Notwithstanding any other provisions of this chapter, *reasonable
> attorneys' fees and costs shall be awarded to the prevailing party or
> substantially prevailing party on appeal before the court of appeals* or the
> supreme court of a decision by a county, city, or town to issue, condition, or
> deny a development permit involving a site-specific rezone, zoning, plat,

25

conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

> *(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and*
> *(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.*

(Emphasis added.) (Alteration in original.) Pursuant to the statute, a party to a land use decision is only entitled to attorney fees on appeal if the prevailing party at the administrative level is also the prevailing party in all prior judicial decisions. The Developers have not prevailed in this appeal. They are therefore not entitled to an award of attorney fees.

## CONCLUSION

We reverse the trial court and reinstate the Board's approval of the development conditioned upon construction of a secondary fire access road.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                                Staab, J.

26